79 F.3d 918
 96 Cal. Daily Op. Serv. 1945, 96 Daily Journal
D.A.R. 3305
UNITED STATES of America, Plaintiff-Appellee,
v.
REAL PROPERTY 874 GARTEL DRIVE, WALNUT, CALIFORNIA,
Including any Buildings, Appurtenances or
Improvements Located Thereon, Defendant,
and
Isidro Beltran; Josefina Beltran, Claimants-Appellants.
 No. 94-56237.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 13, 1995.
Decided March 22, 1996.
 
 Paul L. Gabbert, Santa Monica, California, for claimants-appellants.
 Nicholas V. Morosoff, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellee.
 Appeal from the United States District Court Central District of California, A. Andrew Hauk, District Judge, Presiding.
 Before: ALDISERT,* FARRIS and RYMER, Circuit Judges.
 PER CURIAM:
 
 
 1
 Isidro and Josefina Beltran appeal an order forfeiting their property under 18 U.S.C. § 981. The government brought the forfeiture action alleging that the Beltrans' property was involved in, or was traceable to, a transaction that violated 31 U.S.C. §§ 5313(a) and 5324(a). See 18 U.S.C. 981(a)(1)(A). It is illegal under 31 U.S.C. § 5324(a)(3) to structure, or assist in structuring, any transaction for the purpose of evading the reporting requirements of 31 U.S.C. § 5313(a). Section 5313(a), when augmented by the Treasury Secretary's regulation, requires financial institutions to report payment or receipt of currency of more than $10,000 to the Internal Revenue Service.
 
 
 2
 The government also argued that the Beltrans' property was subject to forfeiture because the proceeds of its purchase stemmed from a violation of 18 U.S.C. § 1014. See 18 U.S.C. § 981(a)(1)(C). It is illegal under section 1014 to knowingly make false statements to a federally insured institution for the purpose of influencing the action of that institution.
 
 
 3
 The district court granted summary judgment in favor of the government, and ordered the property forfeited. The owners as claimants have appealed. Although the Beltrans present a number of issues, the major questions for decision involve the innocent owner's defense to a forfeiture proceeding based on 1) illegal structuring, and 2) misrepresentation of income in a loan application to a federally insured financial institution. We will also address the Eighth Amendment's Excessive Fines Clause.
 
 
 4
 Jurisdiction was proper in the district court under 28 U.S.C. §§ 1345 and 1355. We have jurisdiction pursuant to 28 U.S.C. § 1291. Appeal was timely filed under Rule 4(a), Federal Rules of Appellate Procedure.
 
 I.
 
 5
 In May 1988, the Beltrans signed and submitted to Great Western Bank a residential loan application for the purpose of obtaining a mortgage to purchase the property that is the subject of this action. On the loan application, the Beltrans stated that Isidro Beltran was the owner and driver, and Josefina Beltran, the owner and cook, of Josefina's Catering. They represented that they had a joint monthly base income of $8,400.
 
 
 6
 At the time this representation was made, it was false. In their later verified responses to the government's interrogatories, both Isidro and Josefina Beltran admitted that Josefina's Catering actually operated out of Tijuana, Mexico, and that it generated an approximate weekly income of only $150. Nevertheless, although the Beltrans admit that they signed the loan application, they contend that they were ignorant of its contents-including the false statements regarding location and income-because the application had been prepared for them by their real estate broker, Jesus Montoya. They testified that they had not reviewed the contents before signing the instrument.
 
 
 7
 The Beltrans made a cash down payment of $95,000, tendered in the form of ten cashier's checks, to purchase the property. Purchased by Isidro Beltran and Montoya, these checks ranged in amount from $7,500 to $10,000 and were obtained from five different banks (including three separate branches of one bank) on five different dates. Although the Beltrans admit that this was how the checks were obtained, they say that they did not know of any structuring regulation, and that in purchasing the checks, Isidro Beltran was merely following Montoya's instructions.
 
 
 8
 After considering the application, including the $8,400 monthly income from "Josefina's Catering" on its Loan Risk Evaluation form, Great Western Bank approved a $267,000 residential loan for the property, based upon a sales price of $365,000. The sale closed and the loan was secured by a Deed of Trust on the defendant property. The proceeds of the loan were then disbursed to the sellers of the property, and the Beltrans took title.
 
 
 9
 On appeal, the Beltrans raise a host of issues. They contend (1) that as a matter of law, the evidence was insufficient to establish probable cause for the government to forfeit their residence under either of the government's two forfeiture theories; (2) that the district court lacked jurisdiction because the government failed to "plead and prove" probable cause in its complaint; (3) that the court erred in granting summary judgment because genuine issues of material fact were present; (4) that the court erred in denying leave to amend their answer, denying them the opportunity to add innocent owner and Eighth Amendment excessive fines defenses; and (5) that the forfeiture of their property violates the Excessive Fines Clause of the Eighth Amendment.
 
 
 10
 These contentions are subsumed in the overarching argument that the district court erred in granting summary judgment in favor of the United States. Summary judgment is reviewed de novo. Gasho v. United States, 39 F.3d 1420, 1427 (9th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 2582, 132 L.Ed.2d 831 (1995). Viewing the evidence in the light most favorable to the non-moving party, we must determine whether there are genuine issues of material fact and whether the district court correctly applied the relevant substantive law.
 
 II.
 
 11
 Most of the issues raised do not require extensive discussion.A.
 
 
 12
 The Beltrans argue that the evidence was insufficient as a matter of law to establish probable cause for the government to forfeit their residence under either of the government's forfeiture theories. The standard of probable cause to support forfeiture is similar to that required to obtain a search warrant. See United States v. One 56-Foot Motor Yacht Named Tahuna, 702 F.2d 1276, 1281 (9th Cir.1983). The government need prove only that it had reasonable grounds to believe that the property was involved in the alleged offenses, "supported by less than prima facie proof but more than mere suspicion," id. at 1282 (citations omitted), and that belief may be supported by hearsay evidence, id. at 1283.
 
 
 13
 Specifically, the Beltrans contend that the government lacked any basis to believe that Great Western Bank was a federally insured financial institution at the time that either the forfeiture complaint was filed or the false loan application submitted. Yet Special Agent Linda Morris, in a declaration dated June 2, 1993, explicitly stated that Great Western Bank was "a federally insured financial institution." This contention was not challenged by countervailing evidence. Moreover, on the loan application itself appears the caption "Great Western Bank, a Federal Savings Bank." Thus we hold that there was sufficient evidence to establish probable cause for forfeiture.
 
 
 14
 As to the government's contention that the Beltrans made false material statements in their residential loan application, the Beltrans argue that the false statements regarding their income were not material. We have made clear, however, that in the context of 18 U.S.C. § 1014, "[a] statement concerns a material fact when the statement has the capacity to influence the lending institution." Theron v. U.S. Marshal, 832 F.2d 492, 497 (9th Cir.1987) (citations omitted), cert. denied, 486 U.S. 1059, 108 S.Ct. 2830, 100 L.Ed.2d 930 (1988). It is irrelevant whether a lending institution actually relies upon an allegedly false statement, so long as the statement, as was the case here, was capable of influencing the lending decision. See United States v. Kennedy, 564 F.2d 1329, 1340-41 (9th Cir.1977), cert. denied, 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978).
 
 B.
 
 15
 The Beltrans contend also, without supporting authority, that the district court lacked jurisdiction. Yet the complaint clearly states the two bases for forfeiture: (1) 18 U.S.C. § 981(a)(1)(C), because the property constitutes, or is derived from proceeds traceable to, a violation of 18 U.S.C. § 1014 (the prohibition on making false statements to influence a lending institution); and (2) 18 U.S.C. § 981(a)(1)(A), because the property was involved in a transaction or attempted transaction in violation of 31 U.S.C. §§ 5313(a) (the reporting requirement) or 5324(a) (subsection (3), the illegal structuring prohibition).
 
 
 16
 The Beltrans appear to argue as well that a magistrate was required to review the government's civil forfeiture complaint for probable cause before the clerk of the court could issue a warrant of arrest in rem and thereby confer jurisdiction on the district court. The Beltrans offer no persuasive authority for this proposition.
 
 C.
 
 17
 The Beltrans assert also that the statute of limitations bars the forfeiture proceeding because the complaint was filed five years after the loan application. However, 19 U.S.C. § 1621 permits the action to be "commenced within five years after the time when the alleged offense was discovered " (emphasis added). The statutory period thus begins to accrue only upon discovery of the offense, not with the commission thereof. The record shows a timely filing.
 
 III.
 
 18
 To prevail in a forfeiture action, the government need not prove that the claimant himself committed the underlying offense. Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 683-84, 94 S.Ct. 2080, 2091-92, 40 L.Ed.2d 452 (1974) (due process permits forfeiture of criminally tainted property, when "the innocence of the owner was 'fully established' "), quoting United States v. Brig Malek Adhel, 43 U.S. (2 How.) 210, 238, 11 L.Ed. 239 (1844); see also United States v. All Assets of Statewide Auto Parts, 789 F.Supp. 537, 540 (E.D.N.Y.1992) (in in rem forfeiture proceedings, the government need not prove that the owner participated in the criminal violation or was even aware of it). Rather, the government need only establish probable cause that the defendant property was involved in the alleged underlying offense, following which the burden shifts to the claimant to establish by a preponderance of the evidence that the defendant property is not subject to forfeiture. United States v. $69,292.00 in U.S. Currency, 62 F.3d 1161, 1165 (9th Cir.1995).
 
 
 19
 The claimant may meet this burden by proving either (i) that the defendant property was in fact not involved in the alleged underlying offense, see United States v. One 1977 Mercedes Benz, 450 SEL, 708 F.2d 444, 447 (9th Cir.1983), cert. denied, Webb v. United States, 464 U.S. 1071, 104 S.Ct. 981, 79 L.Ed.2d 217 (1984), or (ii) that the statutory innocent owner defense applies (i.e., that the illegal activity took place without the claimant's knowledge), see 18 U.S.C. § 981(a)(2).
 
 
 20
 After the government established probable cause for forfeiture, the only material questions of fact that the Beltrans could have raised were: (i) whether the defendant property was in fact purchased with the proceeds of a fraudulent loan application (regardless of who prepared the application and of the extent of Beltrans' involvement in the submission of the loan application); (ii) whether the down payment on the defendant property was in fact structured to avoid bank reporting requirements (again, regardless of who actually performed the structuring and of the extent of Beltrans' involvement therein); and (iii) whether the Beltrans are innocent owners. The Beltrans offered no evidence raising a genuine issue of material fact on the first two questions; instead, they conceded that the property was the product of both the false loan application and the structuring, and then placed the blame on their real estate broker, Jesus Montoya. They did, however, present evidence as to the innocent owner defense.
 
 A.
 
 21
 The Beltrans assert that a denial of their request to amend their answer prevented the district court from properly considering the innocent owner and Eighth Amendment Excessive Fines Clause defenses. The government argues that at the summary judgment hearing, the Beltrans' counsel stated that "the material question of fact remains with respect to the innocent owner defense assuming the Court permits the claimants to amend their answers," and that the court responded: "I am not going to." ER 304. Nevertheless, according to the government, the court "proceeded to inquire into the claimants' purported bases for their innocent ownership claims, and subsequently made various factual determinations to the effect that the requirements of the innocent owner defense had not been met." Govt. Brief at 23. Because the record is not a model of clarity, the best course is to assume that the Beltrans' answer was de facto amended to permit the Beltrans to assert both the innocent owner and Eighth Amendment defenses.[1]
 
 
 22
 Our analysis of the Beltrans' innocent owner defense begins with the statute. Section 981(a)(2) provides that "[n]o property shall be forfeited ... to the extent of the interest of an owner ... by reason of any act or omission established by that owner ... to have been committed without the knowledge of that owner ...". 18 U.S.C. § 981(a)(2). Thus once the government established probable cause, as it did here, the burden shifted to the Beltrans to demonstrate that they lacked knowledge of the illegal transactions. We reject the government's argument that the Beltrans have the additional burden of demonstrating that they had taken all reasonable steps to prevent the illegal use of the property. That burden only arises when the forfeiture statute's innocent owner defense contains a consent element. See, e.g., 21 U.S.C. §§ 881(a)(6) and 881(a)(7) (claimant must show lack of knowledge and consent). The plain language of § 981(a)(2) only requires claimants to demonstrate ignorance of the illegal transactions. See United States v. All Assets of G.P.S. Automotive Corp., 66 F.3d 483, 487-88 (2d Cir.1995) (applying § 981(a)(2) without reference to whether claimant took reasonable steps to prevent illegal activity); United States v. $705,270.00, 820 F.Supp. 1398, 1402 (S.D.Fla.1993) ("[b]ecause 18 U.S.C. § 981(a)(2) does not include a consent element in its innocent owner provision, a claimant in a forfeiture action under 18 U.S.C. 981(a) is not required to show that he took all reasonable efforts to prevent the illegal use of his property"); United States v. 316 Units of Mun. Securities, 725 F.Supp. 172, 180 (S.D.N.Y.1989) (§ 981(a)(2) "requires only a showing of ignorance of the illegal transactions").
 
 
 23
 Isidro Beltran admitted accompanying Mr. Montoya to the banks to obtain the various cashier's checks. But he claims that he did not know it was against the law to buy cashier's checks for cash in amounts under $10,000. An innocent owner under § 981(a)(2), however, must lack knowledge of the transactions; it is not enough to demonstrate ignorance of the transactions' illegality. See 316 Units of Mun. Securities, 725 F.Supp. at 180. Mr. Beltran's innocent owner defense fails. The government was entitled to summary judgment against his share of the property for the § 5313 and § 5324 violation.
 
 B.
 
 24
 Josefina Beltran, co-owner of the property, also asserts an innocent owner defense. She claims that she had no knowledge of the expeditions to the five banks or that cashier's checks were used in the real estate transactions until a lawyer informed her of this in 1994. The government has not refuted that claim. There is a genuine question as to whether she knew about the illegal transactions. It was error to grant summary judgment against Josefina Beltran on the innocent owner defense to the forfeiture based on improper structuring.
 
 IV.
 
 25
 We now consider the government's alternative basis for the forfeiture: that the Beltrans falsely reported their income in order to obtain a loan from a federally insured financial institution. Uncontroverted record evidence indicates that in the loan application, the Beltrans falsely represented that they had a joint monthly base income of $8,400 from Josefina's Catering, when apparently this business generated only a monthly income of some $600. This representation constituted a material fact and facially supports a forfeiture proceeding on the defendant property under 18 U.S.C. § 981(a)(1)(C), because the property was derived from proceeds traceable to a violation of 18 U.S.C. § 1014. We reject the Beltrans' innocent owner defense to this claim because both Isidro and Josefina Beltran obviously knew about, or were willfully blind to, the false statements in the loan application. See United States v. One 1980 Red Ferrari, 827 F.2d 477, 480 (9th Cir.1987) (claimant cannot avoid knowledge of illegal activity by "sticking his head in the sand").
 
 V.
 
 26
 The Excessive Fines Clause applies to § 981 forfeiture since nothing in the statute or its legislative history "contradict[s] the historical understanding of forfeiture as punishment." See Austin v. United States, 509 U.S. 602, ----, 113 S.Ct. 2801, 2810, 125 L.Ed.2d 488 (1993). In the Beltrans' case, the government seeks forfeiture of the first $95,000 of the net equity in the Beltrans' property for the violation of 31 U.S.C. § 5324. It additionally seeks the outstanding principal balance of Great Western's loan for the violation of 18 U.S.C. 1014. The Beltrans argue that these amounts violate the Excessive Fines Clause.
 
 
 27
 Unfortunately, we have been unable to ascertain from the record either the nature of the presentation before the district court, or how or whether the court actually ruled on the excessive fines issue. Moreover, after the district court entered summary judgment, we articulated a two-pronged approach for deciding whether a forfeiture of real property constitutes an excessive fine in United States v. Real Property Located in El Dorado County, 59 F.3d 974 (9th Cir.1995). Accord, $69,292.00, 62 F.3d at 1166. We therefore pass the excessive fines question to the district court for appropriate record development and determination in the first instance.
 
 
 28
 The summary judgment is AFFIRMED in part and VACATED in part and the cause REMANDED for further proceedings on the excessive fines question.
 
 
 29
 AFFIRMED IN PART; VACATED IN PART; REMANDED.
 
 ALDISERT, Senior Circuit Judge, concurring:
 
 30
 I join the Per Curiam opinion and offer these additional comments solely to express concern over what may be a particularly troublesome Eighth Amendment issue lurking in this case. The Amendment provides:
 
 
 31
 Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.
 
 
 32
 At jeopardy on remand is the money the Beltrans used to purchase the defendant property.
 
 
 33
 When the district court addresses this issue upon remand, it should consider the factors set forth in United States v. Real Property Located in El Dorado County, 59 F.3d 974 (9th Cir.1995). In El Dorado, we held that in order to survive an Excessive Fines challenge the property must, inter alia, have "a close ... relationship to the offense." Id. at 982. Based on the government's characterization at oral argument of the husband Appellant as a convicted "drug trafficker" and "drug dealer," I am concerned about the relationship of this forfeiture proceeding to the stated underlying offense.
 
 
 34
 Forfeiture is strong medicine. If the government's decision to initiate and prosecute an in rem forfeiture, ostensibly for illegal structuring or exaggeration of income in a loan application, were actually influenced in whole or in part by a property owner's drug trafficking experience, then a question could arise whether the forfeiture would serve as additional punishment for the drug offense. See United States v. One 1978 Piper Cherokee Aircraft, 37 F.3d 489, 494-95 (9th Cir.1994) (the question of "whether forfeiture was an excessive fine" may require asking if the government sought to punish claimant for a conviction other than the underlying offense).
 
 
 35
 If on remand a record were developed indicating that this was one of the purposes of this forfeiture, then it would be proper to inquire if this presented an Eighth Amendment problem in the form of additional punishment for the husband Appellant's criminal activity, or possibly a run-of-the-mill due process problem. See id. at 495. I do not contend that this is the case here. I observe only that the state of the present record permits this possibility to be examined on remand.
 
 
 36
 My own judicial experience has not exposed me to any forfeiture proceeding instituted against a claimant solely for puffing his or her income on a real estate mortgage loan application;[1] and only rarely has forfeiture served as an adjunct punishment for a structuring offense. Confessedly, it is this lack of experience that puts me on guard.
 
 
 
 *
 Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 [1]
 The government states: "The District Court Did Not Deny Claimants Leave to Amend Their Answer." Govt. Br. at 22
 
 
 [1]
 Nor has my review of reported opinions to date revealed such a case