UNITED STATES of America, Plaintiff,

v.

3814 NW THURMAN STREET, PORT-
LAND, MULTNOMAH COUNTY,
STATE OF OREGON, a Tract of Real
Property, its Buildings, Improvements,
Appurtenances, and Easements, in rem,
Defendant.

Civil No. 95–940–FR.

United States District Court,
D. Oregon.

Oct. 1, 1996.

Kristine Olson, United States Attorney,
Robert D. Nesler, Assistant United States
Attorney, Portland, OR, for Plaintiff.

E.J. Simmons, Portland, OR, for Claimant
Gloria Ladum.

## OPINION

FRYE, District Judge:

The matters before the court are 1) claimant's motion for summary judgment (# 62); and 2) plaintiff's motion for summary judgment (# 70).

## BACKGROUND

This is a civil *in rem* forfeiture action in which the United States seeks to forfeit real property with buildings, appurtenances and improvements commonly known as 3814 N.W. Thurman Street, Portland, Oregon pursuant to 18 U.S.C. § 981(a)(1)(C). The complaint was filed on June 29, 1995. An amended complaint was filed on July 17, 1995. The warrant for arrest of property was issued on July 25, 1995.

On August 7, 1995, Gloria Ladum filed a claim against the defendant real property, and on August 17, 1995, Gloria Ladum filed an amended claim against the defendant real property.

On August 22, 1995, the Chemical Mortgage Corporation filed a claim against the defendant real property.

On August 24, 1995, Multnomah County, Oregon filed a claim against the defendant real property for unpaid real property taxes.

On November 1, 1995, this court entered an order of default as to the defendant real property and as to all persons claiming any right, title or interest in the defendant real property, except for Gloria Ladum, the Chemical Mortgage Corporation, and Multnomah County, Oregon.

## FACTS

In October of 1993, the claimant, Gloria Ladum, applied for a $322,500 residential mortgage loan from Emerald Mortgage Corporation. The stated purpose of the loan was to refinance Gloria Ladum's mortgage on the defendant real property and to remodel or to improve other properties she owned. At this time, Chemical Bank, whose accounts were insured by the Federal Deposit Insurance Company, was the underwriter of any loan in excess of $202,000 which was processed by Emerald Mortgage Corporation. The processing and the closing of the loan applied for by Gloria Ladum involved the use of the United States mail, Federal Express, and telephone and facsimile wire communications.

In connection with the review of Gloria Ladum's application for a loan, Chemical Bank received unsigned copies of Gloria Ladum's loan application and unsigned copies of Gloria Ladum's Form 1040 tax returns with attachments for the years 1990, 1991 and 1992, which Gloria Ladum represented were her tax returns for those years. Chemical Bank approved the loan to Gloria Ladum subject to certain conditions, which included the requirement that Gloria Ladum sign the loan application and the unsigned copies of her Form 1040 tax returns with attachments for the years 1990, 1991 and 1992.

At the time of the closing of her loan from Emerald Mortgage Corporation, Gloria Ladum signed a note and trust deed naming Emerald Mortgage Corporation as the beneficiary in each. After closing, Emerald Mortgage Corporation assigned the note and trust deed to Chemical Bank.

Also at the time of the closing of her loan from Emerald Mortgage Corporation, Gloria Ladum signed the typed loan application and copies of what she represented were her 1991 and 1992 Form 1040 tax returns. When she signed the purported tax returns, Gloria Ladum observed that the returns listed Terry Meegan as the tax preparer. Gloria Ladum knew that Meegan was not the tax preparer she had employed to prepare her 1991 and 1992 tax returns, and she knew that Dale A. Jenkins was the preparer of her tax returns for the years 1990, 1991 and 1992.

When her deposition was taken, Gloria Ladum testified that she did not review the loan application or the tax returns that she signed at the time of the closing of her loan or take any other steps to assure the accuracy of the information that she had provided.

The loan application signed by Gloria Ladum at the time of closing stated that her residence for the prior fourteen years was 3814 N.W. Thurman Street. The occupancy certification signed at the time of closing stated that she would be using the property located at 3814 N.W. Thurman Street as her primary residence. Gloria Ladum moved into the residence at 3814 N.W. Thurman Street in December of 1993. She had never lived there prior to that time.

The loan application signed by Gloria Ladum did not disclose her obligations to William Ferguson in the amount of $33,140 and to Colville Contractors in the amount of $75,216.63, both of which loans were paid from the proceeds of the loan from Emerald Mortgage Corporation.

The loan application signed by Gloria Ladum contains a representation that her base monthly employment income was $10,564. The unsigned copies of the 1990, 1991 and 1992 tax returns and the copies of the signed 1991 and 1992 tax returns that were supplied to Emerald Mortgage Corporation and Chemical Bank by Gloria Ladum reflect that her adjusted gross income was $99,396 in 1990, $102,153 in 1991, and $106,557 in 1992. The tax returns actually filed by Gloria Ladum with the Internal Revenue Service reflect that her adjusted gross income was $25,273 in 1990, $14,312 in 1991, and $38,247 in 1992.

In June of 1993, Terry Meegan prepared and supplied to Clayton Ladum "pro forma" tax returns for Gloria Ladum for the calendar years 1990, 1991 and 1992, with a cover letter stating that "[t]hese pro forma returns differ from the original versions filed with the Internal Revenue Service and do not purport to represent the actual copies of the returns.... In view of your analysis, your aunt should consider amending the original returns to reflect these changes." Plaintiff's Concise Statement of Material Facts, Exhibit X. Each of the "pro forma" returns contained the language "PRO FORMA—SEE COVER LETTER" on each form and schedule. *Id.* at Exhibits Y, Z and AA. These "pro forma" 1990, 1991 and 1992 tax returns prepared by Terry Meegan are identical to the tax returns supplied to Emerald Mortgage Corporation and Chemical Bank, except that the copies received by Emerald Mortgage Corporation and Chemical Bank do not contain the words "PRO FORMA—SEE COVER LETTER" on each form and schedule. Furthermore, the dates of preparation of the returns differ or are absent, and no cover letter was provided.

At the time of closing, Gloria Ladum signed numerous documents advising her of the criminal penalties associated with making false statements in the loan application process, including the loan application, the Form 1040 tax returns for 1991 and 1992, Fannie Mae Borrower's Certification and Authorization, Emerald Mortgage Corporation Borrower's Certificate and Authorization, and Emerald Mortgage Occupancy Certification and Warranty.

## CONTENTIONS

Gloria Ladum contends that she is entitled to summary judgment in this action on the grounds that she is an innocent owner. Gloria Ladum contends that the alleged crimes which form the basis for the forfeiture were committed without her knowledge.

The government contends that it is entitled to summary judgment on the grounds that there is probable cause to forfeit the defendant real property; that Gloria Ladum cannot meet her burden of proving that she can establish an innocent owner defense; and

that the forfeiture would not constitute an excessive fine under the Eighth Amendment to the United States Constitution.

## APPLICABLE STANDARD

Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

In a civil forfeiture case, the government has the initial burden to demonstrate probable cause to believe that the defendant property is forfeitable. *United States v. Padilla,* 888 F.2d 642, 643 (9th Cir.1989). If the government meets its initial burden to submit evidence upon which this court can find probable cause to believe that the defendant real property is forfeitable, the burden shifts to the claimant who must produce evidence which either 1) refutes the government's showing of probable cause; or 2) provides a defense to the forfeiture.

## ANALYSIS

The government has come forward with evidence sufficient to demonstrate to this court that there is probable cause to believe that the defendant real property located at 3814 N.W. Thurman Street, Portland, Oregon is forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C) because it constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1014 (false statement knowingly made to a financial institution for the purpose of influencing the action of the institution), and 18 U.S.C. §§ 1341 and 1343 (a scheme to defraud or obtain money by false or fraudulent pretenses involving the use of the United States mails and wire communications).

Gloria Ladum attempts to refute the evidence that the defendant real property is forfeitable by arguing that there was no risk to Chemical Mortgage Company because the equity of Gloria Ladum in the subject property has always been sufficient to cover the amount of the loan from Chemical Mortgage Company. There is evidence in this case of

numerous false statements made to Chemical Mortgage Company in connection with the loan application process which might subject the FDIC to the risk of loss. *See Williams v. United States,* 458 U.S. 279, 294, 102 S.Ct. 3088, 3096–97, 73 L.Ed.2d 767 (1982).

Gloria Ladum contends that her interest in the defendant real property should not be subject to forfeiture because she is an innocent owner. Counsel for Gloria Ladum argues:

> Mrs. Ladum had no knowledge of any crime. Furthermore, her actions were consistent with the great majority of people who close purchases and refinancings of homes. Only about 1 out of 100 of such people read the closing documents. Mrs. Ladum reasonably relied on those who were helping her. Her lack of knowledge, and the reasonableness of her reliance on others, is not in serious dispute. A fact finder cannot conclude otherwise given the evidence of how residential refinancings are typically closed.

Memorandum in Support of Claimant's Motion for Summary Judgment, p. 2.

18 U.S.C. § 981(a)(2) provides that "[n]o property shall be forfeited ... to the extent of the interest of an owner ... by reason of any act or omission established by that owner ... to have been committed without the knowledge of that owner...." Once the government has established probable cause, the burden shifts to Gloria Ladum to demonstrate that she lacked knowledge of the illegal transactions.

The government contends that Gloria Ladum cannot qualify as an innocent owner because she is not an innocent owner.

In *United States v. 874 Gartel Drive,* 79 F.3d 918 (9th Cir.1996), the court found that the claimants were not entitled to prevail as innocent owners where they signed a loan application representing that they had a joint monthly income of $8,400 from one of the claimant's catering business, when the catering business generated a monthly income of some $600. The claimants argued that they had failed to read the application and relied on others to prepare the application. The court explained that "[w]e reject the Beltrans' innocent owner defense to this claim because both Isidro and Josefina Beltran ob-

viously knew about, or were willfully blind to, the false statements in the loan applications." *Id.* at 924.

There is evidence in the record before this court that Gloria Ladum knew at the time of closing that the tax returns she was signing were false. Gloria Ladum was aware when she signed the documents that she represented were copies of her 1991 and 1992 tax returns that the tax preparer named in the documents was not the tax preparer she had used to prepare her 1991 and 1992 tax returns. Under these circumstances, Gloria Ladum cannot escape responsibility for the false representations by stating that she did not read the documents and relied on others to prepare them. The court concludes that Gloria Ladum either knew about the false statements made in the loan application process or was willfully blind to them, and she is therefore not entitled to prevail on her defense of innocent owner.

## CONCLUSION

Claimant's motion for summary judgment (# 62) is denied. Plaintiff's motion for summary judgment (# 70) is granted. The plaintiff shall prepare the appropriate judgment, submit it to opposing counsel, and then submit it to the court for consideration and signature.