129 F.3d 486
 97 Cal. Daily Op. Serv. 8418, 97 Daily Journal
D.A.R. 13,591
UNITED STATES of America, Plaintiff-Appellee,
v.
$129,727.00 U.S. CURRENCY, Defendant.
Daniel Trujillo, Claimant-Appellant.
 No. 96-55606.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 7, 1997.
Decided Nov. 3, 1997.
 
 Janet Sherman, Sherman & Sherman, Santa Monica, CA, for Claimant-Appellant.
 Michele C. Marchand and Mariam A. Krinsky, Assistant United States Attorneys, Los Angeles, CA, for Plaintiff-Appellee.
 Appeal from the United States District Court for the Central District of California; George H. King, District Judge, Presiding. D.C. No. CV-95-04287-GHK.
 Before: HALL and T.G. NELSON, Circuit Judges, and WINMILL,* District Judge.
 T.G. NELSON, Circuit Judge:
 
 
 1
 Daniel Trujillo appeals the district court's judgment of forfeiture of $128,740 in drug-trafficking proceeds under 21 U.S.C. § 881(a)(6). Trujillo argues the Government failed to show probable cause for the forfeiture. In addition, he contends that the civil forfeiture statute violates due process by requiring the Government to merely show probable cause in quasi-criminal proceedings. We affirm.
 
 FACTS AND PROCEDURAL HISTORY
 
 2
 On October 4, 1994, a Los Angeles County sheriff's deputy on the narcotics detail at Los Angeles International Airport received a tip from a citizen informant. Two men, Apolonio Portillo and Daniel Piujillo, had purchased one-way tickets with cash late the previous evening for American Airlines Flight 33 between New York and Los Angeles. The informant gave no physical description of either man, but provided a tag number for Piujillo's checked baggage. The deputy passed the information to the three other persons on the narcotics detail that day, including a Drug Enforcement Administration ("DEA") agent and a Los Angeles Police Department ("LAPD") detective.
 
 
 3
 When Flight 33 arrived, the DEA agent went to the tarmac to locate and identify the checked luggage with the baggage tag number given by the informant. He found a relatively new suitcase, with an identification tag bearing the name of Daniel Trujillo. Meanwhile, two deputies went to the gate to watch passengers deplane. They noticed Trujillo, one of the last passengers to deplane, who perused the gate area. The deputies followed Trujillo to the baggage claim area, where they rejoined the DEA agent and pointed out Trujillo as a possible subject of the tip. Two women joined Trujillo. Trujillo scanned the baggage claim area while the suitcase that the DEA agent had previously identified circled the carousel five times. Then Trujillo picked up the bag, looked around again, and headed for the exit.
 
 
 4
 The DEA agent and one deputy followed Trujillo. At the arrival curb, the agent approached Trujillo and identified himself as a DEA agent. The deputy stood behind Trujillo. The agent specifically told Trujillo that he was not under arrest and he was free to leave. Trujillo indicated his willingness to speak. Upon request, Trujillo produced his airline ticket which bore the name of Daniel Piujillo, and his California identification with the name of Trujillo, explaining the discrepancy as due to the ticketing agent's error. The DEA agent noticed that Trujillo's ticket envelope also held a one-way ticket for Apolonio Portillo from New York to Los Angeles.
 
 
 5
 The DEA agent announced he was on the airport's narcotics detail and asked Trujillo if he was carrying narcotics or large amounts of currency. Trujillo said he was a shoe salesman and had $40,000 in his suitcase from the sale of two cars in New York the previous day. The agent asked for and received permission to open the suitcase. Inside were bundles of currency, wrapped first in fabric softener sheets and then tightly in plastic wrap.
 
 
 6
 Meanwhile, about ten feet away, the LAPD detective had been speaking to Maria Ramos, one of the woman who had met Trujillo. Ramos told the detective the carry-on bag she carried belonged to Trujillo, who had given it to her in the baggage claim area. When the carry-on bag was brought to Trujillo, he stated that the clothes inside the bag were his, but the bag actually belonged to Portillo. A deputy asked for and received consent to open the carry-on bag. Inside were two bundles of U.S. currency, one marked $50,000 and the other marked $25,000. The currency in the carry-on bag was wrapped in fabric softener sheets and plastic wrap in the same manner as that in the suitcase.
 
 
 7
 The DEA agent then asked Trujillo to accompany him to the DEA office at the airport, where Trujillo gave further information. Because Trujillo had not been advised of his Miranda rights and the district court found that he had been under de facto arrest, the court suppressed all statements and evidence arising solely from the detention at the DEA office. A trained narcotics dog alerted the agents to the presence of narcotics on the currency. Trujillo was arrested and the Government seized a total of $129,727 in U.S. currency: $128,740 from the two bags and $987 from Trujillo's person.
 
 
 8
 Nine months after the arrest and seizure, the Government filed a complaint for civil forfeiture of the $129,727. After filing a claim for restitution, Trujillo moved to suppress essentially all the Government's evidence, alleging violations of the Fourth and Fifth Amendments.
 
 
 9
 At the district court hearing on Trujillo's motion to suppress, the DEA agent was the sole Government witness. The agent, who had eight years' experience as a DEA special agent, testified that many of Trujillo's actions were consistent with a drug courier profile. These included Trujillo's late-night cash purchase of a one-way ticket, travel between New York and Los Angeles, use of a relatively new suitcase, dissociation from his travelling companion, being among the last to deplane, looking around the gate and bag claim areas, and allowing his baggage to circle the baggage carousel multiple times before picking it up. The agent also testified that many couriers wrap drugs or drug moneys in fabric softener sheets in an apparent attempt to avoid detection of even traces of narcotics by narcotics-sniffing dogs. The agent stated that Trujillo had voluntarily given permission to open the suitcase and the carry-on bag. The district court specifically found the agent's testimony credible. Most significantly, the court found that the curbside events did not amount to a detention and that Trujillo voluntarily gave consent for both bags to be searched. Based on the totality of the circumstances at the time the second bag was opened, the district court found probable cause for the seizure of the currency found in the suitcase and carry-on bag. The court found no probable cause for the seizure of the $987 later found on Trujillo's person because the money had an insufficient nexus to drug transactions.
 
 
 10
 At the court's suggestion, the parties stipulated that the district court could base its judgment in the forfeiture action solely on the evidence presented at the suppression hearing instead of holding a trial. The parties stipulated to the motions that would be offered if a trial were held. Trujillo moved the court for an order declaring that the forfeiture statute violated due process by requiring the Government to prove only probable cause for seizure. In addition, the parties stipulated that the Government would not rely on the canine sniff to establish probable cause.
 
 
 11
 The district court denied Trujillo's motion and issued a judgment granting forfeiture of $128,740 to the United States. This timely appeal followed.
 
 DETERMINATION OF PROBABLE CAUSE
 A. Standard of Review
 
 12
 We review the district court's determination of probable cause de novo. See United States v. Jones, 84 F.3d 1206, 1210 (9th Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 405, 136 L.Ed.2d 319 (1996). We review the district court's findings of fact for clear error, giving due weight to the inferences drawn from those facts by the court and law enforcement officers. Ornelas v. United States, 517 U.S. 690, ----, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996).
 
 B. Discussion
 
 13
 Currency associated with drug trafficking is subject to forfeiture to the Government. No property right exists in:
 
 
 14
 All moneys ... furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this title, all proceeds traceable to such an exchange, and all moneys ... used or intended to be used to facilitate any violation of this title....
 
 
 15
 21 U.S.C. § 881(a)(6). The Government must show probable cause that the currency seized from Trujillo was specifically associated with drug trafficking, not just with illegal activity in general. See 19 U.S.C. § 1615; see also United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1071 (9th Cir.1994).
 
 
 16
 Determination of probable cause for forfeiture is based upon a "totality of the circumstances" or "aggregate of facts" test. See United States v. U.S. Currency, $30,060.00, 39 F.3d 1039, 1042 (9th Cir.1994). While the Government need not have prima facie proof, its belief that the currency Trujillo carried was linked to drug trafficking must rise above a mere suspicion. See id. at 1044; see also United States v. One 1978 Piper Cherokee Aircraft, 91 F.3d 1204, 1208 (9th Cir.1996). A finding of probable cause may be premised on the collective knowledge of all the officers working on the airport narcotics detail. See United States v. Del Vizo, 918 F.2d 821, 826 (9th Cir.1990); see also United States v. Bernard, 623 F.2d 551, 560 (9th Cir.1979). Moreover, because otherwise innocent-looking conduct may convey different messages to a trained observer, the experience and knowledge of the detail members can be taken into account when determining probable cause. See Bernard, 623 F.2d at 560. "The fact that some of these acts, if reviewed separately, might be consistent with innocence is immaterial." United States v. Hoyos, 892 F.2d 1387, 1393 (9th Cir.1989).
 
 
 17
 The district court found probable cause for the seizure of the currency found in the suitcase and carry-on bag. It based its findings on the following circumstances, the first five of which were consistent with a drug courier profile:
 
 
 18
 (1) A citizen informant gave a tip concerning Trujillo's late-night cash purchase of a one-way ticket; the slight discrepancy in names was easily explained by clerical error.
 
 
 19
 (2) Trujillo was one of the last persons to deplane.
 
 
 20
 (3) Trujillo looked around while at the baggage claim area.
 
 
 21
 (4) Trujillo, while close to the baggage carousel, allowed his suitcase to circle five times before picking it up.
 
 
 22
 (5) Trujillo travelled from New York to Los Angeles. New York is a source for drug-related money travelling to Los Angeles, a drug source city. A high percentage of all drug-related currency travels between New York and Los Angeles.
 
 
 23
 (6) While speaking with the DEA agent at curbside, Trujillo was nervous, his hand was shaking, and he was "cotton-mouthed."
 
 
 24
 (7) Both the suitcase and carry-on bag contained large amounts of currency.
 
 
 25
 (8) In each bag, the currency was wrapped in fabric softener sheets, then further wrapped in plastic wrap, a practice used by couriers to thwart narcotics-sniffing canines.
 
 
 26
 Trujillo's actions before his bags were opened gave rise to a reasonable suspicion in the eyes of experienced narcotics investigators that he was involved in drug trafficking. This circuit has long recognized the validity of drug courier profiles as partial grounds for reasonable suspicion justifying limited investigative detention. See United States v. Erwin, 803 F.2d 1505, 1510-11 (9th Cir.1986). Even without a previous description, two deputies identified Trujillo as a possible courier by his manner of deplaning late and examining the gate area. At baggage claim, more incidents likened Trujillo to a courier profile: his use of a relatively new suitcase, his retrieval of a suitcase previously identified by an informant, his allowing the suitcase to circle the carousel five times before picking it up, and his scrutiny of the baggage claim area both before and after retrieving his suitcase.
 
 
 27
 When Trujillo was questioned by the DEA agent at curbside, even more factors gave rise to a suspicion of drug-related activity. Trujillo was nervous and shaking as he spoke to the officers. He told the DEA agent that he was a shoe salesman but was carrying $40,000 currency from the sale of two cars, a highly unusual tale. His ticket and identification revealed him to be the subject of the informant's tip. Moreover, in his ticket envelope he carried the ticket of Apolonio Portillo, the other subject of the informant's tip, and he identified his carry-on bag as belonging to Portillo. Nevertheless, Trujillo had not left the plane with Portillo or met him at the baggage claim. Under these circumstances, the narcotics detail collectively had sufficient "articulable facts which, together with objective and reasonable inferences," would have supported a limited investigatory detention. Easyriders Freedom F.I.G.H.T. v. Hannigan, 92 F.3d 1486, 1496 (9th Cir.1996) (quoting United States v. Rodriguez-Sanchez, 23 F.3d 1488, 1492 (9th Cir.1994)); see also Erwin, 803 F.2d at 1511.
 
 
 28
 After Trujillo's bags were opened with his consent, reasonable suspicion ripened into probable cause for Trujillo's arrest and the seizure of the currency. Trujillo was carrying $115,000 in currency in two bags, an "extremely large amount" of money that by itself was "strong evidence that the money was furnished or intended to be furnished in return for drugs." United States v. $29,959.00 U.S. Currency, 931 F.2d 549, 553 (9th Cir.1991) (quoting United States v. Padilla, 888 F.2d 642, 644 (9th Cir.1989)). Of course, the currency itself, even viewed together with Trujillo's actions in accordance with a courier profile, did not provide a sufficient nexus with drug trafficking to support a finding of probable cause to believe Trujillo was involved in a drug-related transaction. See United States v. $49,576.00 U.S. Currency, 116 F.3d 425, 427-28 (9th Cir.1997). However, the nexus to drugs was provided by the distinctive manner in which the currency was wrapped in fabric softener sheets and plastic wrap. The narcotics detail recognized this wrapping as an indication of drug-related activity.
 
 
 29
 Courts have often recognized the strong connection between fabric softener sheets and illegal drugs. The Third Circuit rejected the claim that a person was an "unwitting courier" partially on the basis that "she brought [a co-conspirator] a package of Bounce Fabric Softener sheets ... so [he] could package drug money for transport." United States v. Edmonds, 52 F.3d 1236, 1245 n. 7 (3rd Cir.1995), rev'd on other grounds, 80 F.3d 810 (1996). Another circuit found evidence of a drug conspiracy based partially on the fact that two persons "entered the Winn-Dixie together to purchase carpet freshener and fabric softener; materials known to be used to mask the odor of cocaine." United States v. Wright, 63 F.3d 1067, 1074 (11th Cir.1995).
 
 
 30
 The nexus between fabric softener and drug trafficking is recognized to be of great probative value. In several cases, private individuals have conducted package searches based solely on the scent of fabric softener. See, e.g., United States v. Brown, 33 F.3d 1014, 1016 (8th Cir.1994) (United Parcel Service employee searched teddy bear for illegal drugs because it was wrapped in fabric softener sheets); United States v. Koenig, 856 F.2d 843, 845 (7th Cir.1988) (Federal Express employee investigated package smelling of laundry soap or fabric softener because of his knowledge of the use of these products to mask the smell of cocaine). In United States v. Quiroz-Hernandez, 48 F.3d 858 (5th Cir.1995), the Fifth Circuit held that, in addition to a driver's statement that the van he was driving was stolen, the "strong odor of fabric softener" and observation of bundles covered by a sheet were "further evidence" that "unquestionably gave the officers probable cause to search the van." Id. at 864.
 
 
 31
 This court has found probable cause for civil forfeiture of drug related moneys even with relatively little evidence so long as the evidence is sufficiently probative. See e.g., United States v. Roth, 912 F.2d 1131, 1134 (9th Cir.1990) (accountant for alleged drug trafficker had series of unusual financial transactions); United States v. U.S. Currency, $83,310.78, 851 F.2d 1231, 1235-36 (9th Cir.1988) (man previously convicted on drug charges stayed in bathroom with toilet running and kicked bag containing over $125,000 behind the door when leaving bathroom, and no one in house admitted to ownership of currency). In addition, this court has acceded to the expertise of officers with knowledge of the common attributes and techniques of persons involved in the drug trade. See, e.g., Hoyos, 892 F.2d at 1390-93 (officers' knowledge, and suspect's erratic driving, use of counter-surveillance techniques and public telephones, and association with persons later arrested for possession of drugs provided probable cause for warrantless arrest on drug charges).
 
 
 32
 Given the strong nexus to drug activity provided by the distinctive manner in which the currency was wrapped and the totality of circumstances at the time the carry-on bag was opened, we hold that "a prudent person with the officers' combined experience in narcotics investigations" would conclude that Trujillo was involved in illegal drug transactions. Hoyos, 892 F.2d at 1392.
 
 CONSTITUTIONALITY OF BURDEN OF PROOF
 A. Standard of Review
 
 33
 The constitutionality of a statute is a question of law that we review de novo. See United States v. Michael R., 90 F.3d 340, 343 (9th Cir.1996).
 
 B. Discussion
 
 34
 Trujillo also challenges the constitutionality of the burden of proof in civil forfeiture proceedings. He contends "a mere probable cause burden in cases which have historically been considered quasi-criminal and which constitute a form of punishment violates the Due Process Clause of the Fifth Amendment." (Appellant's Opening Br. at 17.) Given the expansion of forfeiture statutes in the 1970s and 1980s to include drug-related actions, and in the light of additional constitutional protections for forfeitures provided under the Supreme Court's decisions in Austin v. United States, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), and United States v. James Daniel Good Real Property, 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) ("Good Real Property "), Trujillo suggests our decision in United States v. One 1970 Pontiac GTO, 529 F.2d 65 (9th Cir.1976) (per curiam), upholding the burden against a due process challenge must be reexamined.[1] He urges this court to adopt the "conventional civil standard of a preponderance of the evidence." (Appellant's Reply Br. at 11.)
 
 
 35
 Actions for civil forfeiture employ a shifting burden of proof:
 
 
 36
 In all suits or actions ... brought for [ ] forfeiture ... where the property is claimed by any person, the burden of proof shall lie upon such claimant; and in all suits or actions brought for the recovery of the value ... the burden of proof shall be upon the defendant: Provided, That probable cause shall be first shown for the institution of such suit or action, to be judged of by the court....
 
 
 37
 19 U.S.C. § 1615. This section, which originally applied only to forfeitures for customs violations, was extended to drug-related forfeitures by 21 U.S.C. § 881(d).
 
 
 38
 The burden of proof in a forfeiture action has two parts. To initiate forfeiture, the Government was required to show it had probable cause to believe the currency Trujillo carried was associated with drug trafficking. As we have held, the Government satisfied this burden. Once the Government met this initial burden, the burden shifted to Trujillo to show by a preponderance of the evidence that the currency was not related to drug trafficking. Because Trujillo offered no proof of non-trafficking origins for the currency, it was forfeited to the Government on the initial showing of probable cause.
 
 
 39
 Seen in this light, the actual burden of proof is similar to the standard Trujillo urges us to adopt: it is a preponderance of the evidence standard, albeit one in which the claimant bears the burden. The Government must prove probable cause as a threshold matter. If the claimant offers evidence that the currency is not related to drug trafficking, the Government must then offer enough probative admissible evidence to contest the claimant's proof. Moreover, the claimant need not even prove a legal source for the currency: the claimant simply must show that the currency was not "proceeds of," "furnished or intended to be furnished by any person in," or "used or intended to be used to facilitate" an illegal drug transaction. 21 U.S.C. § 881(a)(6). Under the preponderance standard, the Government must at least equal the claimant's proof with admissible evidence to prevail in a forfeiture action. See, e.g., $29,959.00 U.S. Currency, 931 F.2d at 553. Only where, as here, the claimant offers no evidence of a non-drug-related source for the currency can the Government obtain a judgment of forfeiture on its preliminary showing of probable cause. See, e.g., U.S. Currency, $83,310.78, 851 F.2d at 1233; United States v. $250,000.00 in U.S. Currency, 808 F.2d 895, 897-99 (1st Cir.1987).
 
 
 40
 When this court upheld the constitutionality of the civil forfeiture burden of proof in One 1970 Pontiac GTO, we recognized the standard of proof was not probable cause but a preponderance standard shifted to the claimant. In the face of a challenge similar to Trujillo's suggesting that "forfeiture statutes are essentially criminal," we acknowledged forfeiture statutes were considered "criminal" for the purpose of protecting some Fourth and Fifth Amendment rights. Id. at 66. However, we declared 21 U.S.C. § 881 and 19 U.S.C. § 1615 were "not criminal enough to prevent Congress from imposing the burden of proof on the claimant" and did not violate the claimant's due process rights. Id.
 
 
 41
 Nor does this circuit stand alone in holding the shifting burden of proof does not violate due process. Every circuit court that has directly addressed the issue has found no due process violation. See United States v. One Beechcraft King Air 300 Aircraft, 107 F.3d 829, 829-830 (11th Cir.1997) (per curiam) (upholding shifting burden in forfeiture of aircraft); United States v. $94,000.00 in U.S. Currency, 2 F.3d 778, 782-84 (7th Cir.1993) (upholding shifting burden in forfeiture based on currency reporting violations); United States v. 228 Acres of Land, 916 F.2d 808, 814 (2d Cir.1990) (upholding burden applied to forfeiture of drug-related real property); United States v. Santoro, 866 F.2d 1538, 1543-44 (4th Cir.1989) (same); $250,000.00 in U.S. Currency, 808 F.2d at 900 (upholding burden applied to forfeiture of drug-related currency); Bramble v. Richardson, 498 F.2d 968, 970-73 (10th Cir.1974) (upholding burden applied to forfeiture of drug-related vehicle).
 
 
 42
 Trujillo mischaracterizes the Supreme Court's decisions in Austin and Good Real Property as materially changing constitutional law relating to forfeitures. Both decisions are relatively limited, and neither hinges on a characterization of forfeiture as criminal or quasi-criminal. In Austin, the Court held forfeiture under §§ 881(a)(4) and (a)(7) was a monetary punishment subject to the limitations of the Eighth Amendment's Excessive Fines Clause. Austin, 509 U.S. at 622, 113 S.Ct. at 2812. Significantly, the Court did not base its analysis on characterizing forfeiture as criminal or quasi-criminal. Instead, the Court held that the Excessive Fines Clause covered "punishments." Id. at 610, 113 S.Ct. at 2805-06. Moreover, instead of being prompted to this characterization of forfeiture as punishment by the statute's expansion to include drug-related offenses, the Court emphasized that forfeiture had been considered punishment for centuries. See id. at 610-20, 113 S.Ct. at 2805-11.
 
 
 43
 Soon after its decision in Austin, the Supreme Court held that, absent exigent circumstances, the Due Process Clause required notice and a meaningful opportunity to be heard before the Government seized real property under forfeiture statutes. See Good Real Property, 510 U.S. at 62, 114 S.Ct. at 505. However, the Court did not disavow an earlier case, Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), which held due process did not require the Government to give prior notice for seizure of personal property. Instead, Good Real Property distinguished Calero-Toledo, finding the distinction between non-movable real property and movable personal property dispositive. Forfeitable personal property was appropriate to seize without a prior hearing because the res could be moved or hidden, thwarting the Government's interest in it. Because there was no equivalent danger for real property, the Court required a prior hearing. Good Real Property, 510 U.S. at 52-53, 57-58, 114 S.Ct. at 500-01, 502-03. Because the Court explicitly did not require any additional due process safeguards for movable personal property such as currency, Good Real Property does not support Trujillo's claim of heightened due process concerns.
 
 
 44
 Moreover, the Supreme Court has indicated its intention to read Austin and Good Real Property narrowly. The Court refused to extend Austin 's punishment rationale to bring forfeiture under the Double Jeopardy Clause in United States v. Ursery, --- U.S. ----, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). The Court declared it had a "well-established practice" of regarding in rem civil forfeiture as a remedial civil sanction, not as punishment. Id. at ----, 116 S.Ct. at 2147. It explicitly held that Congress had intended for § 881(a) to be civil, not criminal, in nature: among other things, the statute uses civil enforcement mechanisms and requires no scienter on the part of the property owner. See id. at ----, ----, 116 S.Ct. at 2147, 2149. Moreover, the Court rejected the contention that the provisions of the forfeiture statute were so punitive in form and effect as to render them criminal "despite Congress' intent to the contrary." See id. at ----, 116 S.Ct. at 2148. Cf. Bennis v. Michigan, 516 U.S. 442, ----, ----, 116 S.Ct. 994, 995, 1001, 134 L.Ed.2d 68 (1996) (holding Takings Clause protections did not apply to an innocent owner's interest in a car seized under a state forfeiture statute.)
 
 
 45
 Where the Supreme Court has emphasized the civil nature of forfeitures under § 881(a) and indicated its intention to limit Austin and Good Real Property to their facts, this court will not reach a contrary result. In accordance with our precedent and the decisions of six other circuits, we hold that the shifting burden of proof applied to forfeitures of drug-related currency does not violate the Due Process Clause.
 
 OTHER ISSUES RAISED ON APPEAL
 
 46
 Trujillo argues that the district court improperly permitted the Government to introduce hearsay evidence at the hearing on Trujillo's motion to suppress evidence. He suggests this hearsay is also inadmissible in the Government's showing of probable cause for forfeiture. This contention is without merit. A court may properly consider hearsay evidence in an evidentiary hearing. "Preliminary questions concerning ... the admissibility of evidence shall be determined by the court.... In making its determination it is not bound by the rules of evidence except those with respect to privileges." Fed.R.Evid. 104(a). Moreover, this circuit's settled rule allows hearsay evidence to be used to show probable cause for civil forfeiture. See United States v. 874 Gartel Drive, 79 F.3d 918, 922 (9th Cir.1996); see also United States v. $5,644,540.00 in U.S. Currency, 799 F.2d 1357, 1362 (9th Cir.1986).
 
 CONCLUSION
 
 47
 We hold that the Government satisfactorily met its threshold burden of proof for forfeiture of currency related to drug trafficking. We further hold the statutory burden of proof for forfeiture does not violate the Due Process Clause. The district court's judgment of forfeiture is AFFIRMED.
 
 
 
 *
 Honorable B. Lynn Winmill, U.S. District Judge for the District of Idaho, sitting by designation
 
 
 [1]
 In $49,576.00 U.S. Currency, the majority opinion also urged a reexamination of the due process ramifications of the forfeiture statute, citing a recent "doctrinal upheaval" in Supreme Court jurisprudence. 116 F.3d at 428. The majority concluded that Good and Austin reopened the question of "whether the quantum of evidence the government needs to show in order to obtain a warrant in rem allowing seizure-probable cause-suffices to meet the requirements of due process." Id. at 428-29 (quoting United States v. One Parcel of Property Located at 194 Quaker Farms Road, 85 F.3d 985, 990 (2d Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 304, 136 L.Ed.2d 221 (1996)). We reject this portion of the majority's opinion in $49,576.00 U.S. Currency, because, as Judge Hall pointed out in her partial concurrence in that case, the majority's inquiry into "the constitutionality of burden-shifting in forfeiture proceedings is entirely dictum. Moreover, it is dictum on an important constitutional issue, thus violating our rule against reaching constitutional questions unless we must in order to dispose of a case." Id. at 429 (Hall, J., concurring in part)