888 F.2d 642
 UNITED STATES of America, Plaintiff-Appellee,
v.
Mariuska PADILLA; Marco Padilla; Victor Sales; Humberto
Padilla; Antonio Padilla; Rosa Padilla and
Armando Padilla, Claimants-Appellants,
and
$40,787.00 U.S. Currency, Defendant.
 No. 87-6692.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 4, 1988.
Decided Nov. 6, 1989.
 
 Thomas Hunter Russell, Hollywood, Cal., for claimants-appellants.
 Donna R. Eide, Los Angeles, Cal., for plaintiff-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before SCHROEDER and REINHARDT, Circuit Judges, and HARDY,* District Judge.
 SCHROEDER, Circuit Judge:
 
 
 1
 Claimants Antonio Padilla and his family appeal from a judgment pursuant to 21 U.S.C. Sec. 881 (1982 & Supp. V 1987) forfeiting money furnished or intended to be furnished in exchange for a controlled substance. The judgment was entered following a hearing based on stipulated facts regarding the seizure of the money and the testimony of Padilla and others regarding its source. Two issues are presented. The first is whether the stipulated facts presented to the district court established probable cause to believe that the large amount of money found in appellants' house during a lawful search for evidence of illegal drug activity was linked to a drug transaction. The second is whether the claimants carried their burden of proving the money had a legitimate origin. We affirm.
 
 
 2
 The forfeiture provision of the Controlled Substances Act, 21 U.S.C. Sec. 881, provides for the forfeiture of, inter alia, money used or intended to be used in exchange for illegal controlled substances.[1] Before a forfeiture will lie, the government must initially demonstrate probable cause to believe that the seized property was involved with illegal drug transactions. 19 U.S.C. Sec. 1615 (1982 & Supp. V 1987).[2] Once the government has demonstrated probable cause to institute the forfeiture action, the burden shifts to the claimant. Id. The district court's determination of the existence of probable cause for forfeiture is reviewable de novo as a question of law. United States v. $93,685.61 in U.S. Currency, 730 F.2d 571, 572 (9th Cir.) (per curiam), cert. denied, 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 61 (1984).
 
 
 3
 This circuit applies an "aggregate of facts" test to find probable cause for forfeiture. United States v. $5,644,540.00 In U.S. Currency, 799 F.2d 1357, 1363 (9th Cir.1986). Probable cause cannot be shown unless the aggregate of facts gives rise to more than mere suspicion that the property was exchanged for or intended to be exchanged for drugs; the presence or absence of any single fact is not dispositive. Id. Circumstantial evidence of drug transactions may support the establishment of probable cause. $93,685.61, 730 F.2d at 572. We have said that in assessing probable cause an "extremely large amount of money found in the household itself is strong evidence that the money was furnished or intended to be furnished in return for drugs." Id. However, the test requires more than the mere existence of a large amount of cash to establish a connection between that cash and illegal drug transactions; the money must be "in combination with other persuasive circumstantial evidence." Id. Particularly persuasive is the presence of drugs or drug paraphernalia. See id.
 
 
 4
 In this case the government seized nearly $40,000 which it found in a safe in Padilla's home during a lawful search for evidence of illegal drug activity. This is an unusually large amount of money to be found in cash in a home. While we have never had occasion to consider the minimum amount of cash that may be considered an "extremely large amount," the Second Circuit has characterized an amount as low as $2,500 as being "substantially greater than is commonly kept in residential premises by law-abiding wage earners." United States v. $2,500 in United States Currency, 689 F.2d 10, 16 (2d Cir.1982), cert. denied, 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984). While we doubt that we would ever characterize $2,500 as an "extremely large amount," we would so characterize $40,000.
 
 
 5
 Claimants assert that, regardless of amount, the government cannot show probable cause to believe that a substantial connection existed between the money found and any illegal drug transactions under the law of this circuit which looks to the aggregate of the facts. Claimants stress that in this case the search turned up no illegal drugs or drug paraphernalia.
 
 
 6
 In United States v. U.S. Currency, $83,310.78, 851 F.2d 1231 (9th Cir.1988) we held that evidence apart from the discovery of drugs or paraphernalia may establish the requisite probable cause, and we expressly rejected any requirement that drugs be found on the searched premises before probable cause to forfeit money could be established: "The fact that a controlled substance or related paraphernalia was not found in the [claimant's searched] residence is not dispositive. In reviewing the record we look to the aggregate of facts, not the presence or absence of one factor." Id. at 1236 (citing $5,644,540.00, 799 F.2d at 1363).
 
 
 7
 In $83,310.78, police officers investigating a battery complaint lawfully searched a house with the consent of its owner. Id. at 1235. Once inside, they found and seized $125,410 in cash, wrapped in a brown plastic shopping bag, that the occupant had kicked behind the bathroom door. Id. Applying the aggregate of facts test, we found that the large amount of cash in a bag, combined with the occupant's attempt to conceal the money and his prior arrest and convictions for drug possession, demonstrated probable cause to believe that a connection existed between the money and illegal drug transactions. Id. at 1236.
 
 
 8
 In the present case, unlike $83,310.78, there was no evasive conduct on the premises during the search by an occupant previously convicted of drug possession. However, the uncontroverted facts presented to the district court at the forfeiture hearing demonstrates at least as strong a connection between the searched premises themselves and illegal drug transactions as in $83,310.78.
 
 
 9
 Padilla, the owner of the house where the money was found, was one of several persons observed entering a clothing and jewelry store while it was under police surveillance as a suspected site for drug transactions. The surveillance took place during a two-day period when the store was apparently closed for business, with a "closed" sign on clear display. Nearly all persons observed entering the store were carrying something, yet none of them were observed purchasing jewelry or clothing.
 
 
 10
 On the second day that the jewelry store ostensibly was closed, a yellow Mustang automobile registered to Padilla was observed at the store at about 10:00 a.m. The driver, someone other than Padilla, went into the store and left four and one-half hours later carrying a black briefcase. In the middle of that period, at about 12:30, a gray Cadillac registered to Padilla arrived at the store, and a driver matching Padilla's description went inside. He went into the store carrying a brown package but left nine minutes later carrying nothing. Later that day both the yellow Mustang and the grey Cadillac cars were seen parked at the curb in front of Padilla's home.
 
 
 11
 Based on their surveillance, the police obtained search warrants for the store and the residences of the store's owners and several individuals, including Padilla, who had been at the store during the surveillance. Several of these searches revealed guns, drugs, drug paraphernalia, and large amounts of cash. The search of Padilla's house revealed $39,086.00 in cash in a safe, and $1,701.00 on Padilla's person. Padilla's safe also contained numerous documents falsely identifying Padilla as a Mexican law enforcement official, false vehicle registration forms, two revolvers and two cameras.
 
 
 12
 On the basis of the information leading to the surveillance, the activities observed during the surveillance at the store which were consistent with drug trafficking, the probability that Padilla himself and two of his vehicles were first at the store and then at the Padilla house the same day, there was probable cause to support the search because there was probable cause to believe that the owner of the house had recently been involved in a drug transaction. Padilla does not challenge the search warrant authorizing the search for evidence of drug activity. Thus, the evidence seized during the search was admissible in determining whether probable cause existed to believe that the money was linked to a drug transaction.
 
 
 13
 The showing at the forfeiture hearing, upon which probable cause for the forfeiture is judged, included not only the evidence seized from Padilla's house but also the evidence known to the police prior to the search and the evidence acquired through the searches of the residences of the other individuals involved. The showing thus included additional evidence of Padilla's connection to drug activity beyond the seized currency and the other items found in the safe. The items found during the other searches revealed that others who visited the store during the same hours were engaged in illegal drug activity. We hold that in light of all the facts and circumstances probable cause exists to believe that the money seized had been or was intended to be exchanged for drugs.
 
 
 14
 We then turn to the second issue in the case: whether the claimants met their burden of proving that the money had legitimate origins or objective. Once probable cause for forfeiture of the money has been established, a claimant may still recover the money by proving by a preponderance of the evidence that the money was not involved with illegal drug transactions. $5,644,540.00, 799 F.2d at 1363. Padilla claims as error the district court's conclusion that Padilla failed to prove such a lack of connection by a preponderance of the evidence. Padilla testified at the hearing, attempting to establish the innocent nature of the money. The district court, however, did not find him credible. The trial court's findings of fact are reviewed for clear error. United States v. McConney, 728 F.2d 1195, 1200 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Trial court determinations based on witness credibility are given special deference. Anderson v. City of Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).
 
 
 15
 We find no basis on which to overturn the district court's credibility findings as clearly erroneous. Padilla testified that he had sold the yellow mustang automobile before the surveillance period and had never seen it again. This conflicts with police observations that during the surveillance period the automobile was parked outside Padilla's house. Padilla and family members also gave testimony explaining that the money in his safe had come from his job, from a prior home improvement loan, and from his sons who had asked him to hold it for safekeeping, yet no one provided written documentation or accounts to verify this. The district court was not required to find the testimony of Padilla or the other claimants credible. We conclude that the district court was not clearly erroneous in holding that Padilla failed to prove the money was unconnected with illegal drug transactions.
 
 
 16
 The district court's judgment ordering the defendant currency forfeited to the United States is AFFIRMED.
 
 
 
 *
 Honorable Charles L. Hardy, United States District Judge for the District of Arizona, sitting by designation
 
 
 [1]
 Section 881 provides in pertinent part:
 (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
 * * *
 (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.
 
 
 [2]
 Section 1615 provides in pertinent part:
 In all suits or actions ... brought for the forfeiture of any ... merchandise ... seized under the provisions of ... law ..., where the property is claimed by any person, the burden of proof shall lie upon such claimant ...: Provided, That probable cause shall be first shown for the institution of such suit or action, to be judged of by the court....
 Section 1615, which is a customs duties statute, is used to control the burden of proof in drug forfeiture actions. 21 U.S.C. Sec. 881(d); United States v. $5,644,540.00 In U.S. Currency, 799 F.2d 1357, 1362 (9th Cir.1986).