**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**$29,959.00 U.S. CURRENCY, Defendant,**

**and**

**Robert Navarro, Sara Navarro, Consuelo Navarro, Claimants–Appellants.**

**No. 89–55367.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 11, 1991.

Decided April 24, 1991.

Roger S. Hanson, Santa Ana, Cal., for claimants-appellants.

Mark Feldman and Robert A. Pallemon, Asst. U.S. Attys., Los Angeles, Cal., for plaintiff-appellee.

Before BOOCHEVER, HALL and RYMER, Circuit Judges.

BOOCHEVER, Circuit Judge:

Robert G., Sara, and Consuelo Navarro appeal the district court's judgment of forfeiture of $29,959.00 in currency following a bench trial. The Navarros contend that clerical errors made by the government and the district court, combined with a premature execution of the judgment, prevented them from filing a stay of execution of forfeiture. Additionally they claim that the police did not have probable cause to seize the currency, and that even if they did, the Navarros gave legitimate alternative origins for the currency. Although the currency has been transferred to the United States Treasury, we find that we

have jurisdiction of this case because of errors in the foreclosure procedure. On the merits, however, we AFFIRM.

## BACKGROUND

On April 17, 1987 officers of the Baldwin Police Department executed a narcotics search warrant on a single family residence and trailer at 2228 Troy Avenue in South El Monte. The police found quantities of cocaine and marijuana, a police scanner, scales, and other narcotics paraphernalia in the trailer. Empty bags and paint cans coated with a green leafy residue resembling marijuana were in the yard. A search of the main house uncovered $29,-959.00 secreted in a dresser. A canine narcotics search conducted on the currency one week later indicated the presence of controlled substances. Robert J. Navarro, son of Robert G. and brother of Sara and Consuelo, entered a plea of nolo contendere to charges of possession of cocaine for sale in violation of § 11351 of the California Health and Safety Code.

Because the currency was seized pursuant to a narcotics raid, it was subject to federal forfeiture under 21 U.S.C. § 881(a)(6):

> The following shall be subject to forfeiture to the United States and no property right shall exist in them:
> (6) All moneys, ... furnished or intended to be furnished by any person in exchange for a controlled substance, ... used or intended to be used to facilitate any violation of this subchapter....

The civil forfeiture action was tried on November 23, 1988. The Navarros testified that the defendant currency was derived from legitimate income sources. The court orally ruled that the government had established probable cause for forfeiture because the currency was traceable to narcotics. The court further found that each claimant had failed to meet the burden of proof of showing by a preponderance of the evidence that their respective portion was not connected to narcotics transactions.

On December 21, 1988 the Navarros filed opposition, additions, and corrections to the

proposed findings of fact and conclusions of law. That same day, the district court entered its judgment that defendant currency be forfeited to the United States. On February 22, 1989 the currency was transferred to the United States Treasury. On March 2, 1989, the Navarros filed a motion to reconsider judgment and a motion to allow late notice of appeal. The district court granted the Navarros' motion for late notice of appeal, but denied their motion to reconsider.

## I. JURISDICTION

■ Forfeiture proceedings are *in rem* actions. *United States v. Ten Thousand Dollars in United States Currency,* 860 F.2d 1511, 1513 (9th Cir.1988). As Judge Noonan aptly stated in that case:

Jurisdiction *in rem* is predicated on the "fiction of convenience" that an item of property is a person against whom suits can be filed and judgments entered. The use of *in rem* forfeiture began at a time when jurisdiction was premised on territorial notions of sovereignty. This view of jurisdiction has evolved to one based on due process concerns for "fair play and` substantial justice," *International Shoe Co. v. Washington,* 326 U.S. 310, 316 [66 S.Ct. 154, 158, 90 L.Ed. 95] (1945), even when the court's jurisdiction is predicated on its control over an item of property or *res.*

*Id.* (citations omitted). Jurisdiction in an *in rem* action therefore generally ends with removal of the *res. Id.* Jurisdiction may be retained, however, where the *res* was removed accidentally, improperly or fraudulently. *Id.*

The Navarros argue that the currency was accidentally and improperly removed from the court's jurisdiction because 1) the government failed to serve them with the proposed judgment as required by Local Rules of the Central District of California 14.5; 2) the district court failed to wait five court days from the day the proposed judgment was lodged before signing it, in violation of Local Rule 14.7; and, 3) the court clerk failed to serve them with a notice of entry of judgment pursuant to Fed.R.Civ.P. 77(d).

### A. Government Service of Proposed Judgment

■ The record reflects that on December 15, 1988, the government served a copy of the proposed judgment on the Navarros' counsel. It was lodged the following day, and filed December 19, 1988. Local Rule 14.5 of the U.S. District Court for the Central District of California [hereinafter Local Rule] states:

The attorney whose duty it is to prepare any document required by Local Rules 14.1 [orders], 14.3 [findings of fact and conclusions of law], or 14.4 [judgment] shall serve a copy on opposing counsel on the same day that the document is lodged with the court. Alternatively, the attorney preparing the document may present it to opposing counsel for approval as to form before the document is lodged.

The rule prescribes service either on the day the document is lodged, or prior to lodging. The government served the proposed judgment one day before lodging it. Thus, we find that the government adequately complied with the requirements of Local Rule 14.5 in serving the proposed judgment.

### B. Premature Execution by Court

Under Local Rule 14.7, the trial court is not to sign the judgment until, "opposing counsel shall have endorsed thereon an approval as to form, or the time for objection has expired." The time for objection is five court days after service of a copy of the proposed judgment on opposing counsel. *See* Local Rule 14.6. The Navarros did not endorse their approval on the form of the proposed judgment. Instead on December 21, 1988, they filed an opposition to the findings of fact and conclusions of law. This was four court days after the proposed judgment was served on counsel for the Navarros, and therefore timely. Apparently without considering the opposition, the court entered judgment the same day the opposition was filed rather than waiting five days after the service of the form of judgment on the Navarros. Hence

the district court failed to comply with Rule 14.6.

## C. Service of Judgment by Clerk

Federal Rule of Civil Procedure 77(d) directs:

> [i]mmediately upon the entry of an order or judgment the clerk shall serve a notice of the entry by mail in the manner provided for in Rule 5 upon each party who is not in default for failure to appear, and shall make a note in the docket of the mailing.... Lack of notice of the entry by the clerk does not affect the time to appeal....

Here, the clerk failed to give notice. This failure, standing alone, is harmless where the moving party could have ascertained notice of judgment on its own. The rule states that lack of notice does not affect the time for appeal. The note to Rule 77(d) states that "[i]t would ... be entirely unsafe for a party to rely on absence of notice from the clerk of the entry of a judgment, or to rely on the adverse party's failure to serve notice of the entry of judgment." *See Stevens v. ITT Systems, Inc.*, 868 F.2d 1040 (9th Cir.1989) (due diligence required of counsel in ascertaining whether judgment had been entered regardless of clerk's failure to give notice pursuant to Fed.R.Civ.P. 77(d)). *See also Rodgers v. Watt*, 722 F.2d 456 (9th Cir.1983) (en banc) (where clerk failed to notify the parties of the entry of judgment and time for appeal had expired, plaintiff able to gain relief from judgment only upon a showing of excusable neglect for his failure to learn of judgment on his own).

## D. Improper Transfer

■ If the premature entry of judgment and the clerk's failure to give notice did not adversely affect the Navarros' right to seek a stay of the forfeiture, we do not believe that we may hold the forfeiture to be improper. We hold that errors in the forfeiture procedure may constitute a basis for finding a transfer "accidental, improper, or fraudulent" only when such errors reasonably prevented the claimant from applying for a stay. Here the cumulative failures are sufficient to conclude the *res* was improperly transferred. We reach this conclusion not only because of the cumulative nature of the errors but also because the clerk's failure was not excused by the Navarros' negligence in failing to ascertain notice of judgment on their own. First, the court clerk told Navarros' counsel twice that judgment had not been executed even though it had been. Second, the clerk could not find the file on February 17, 1989 when counsel sought to review it. Third, on February 21, 1989, when counsel was able to obtain the file, he could not find the judgment in the file. Last, the docket entries were out of order.[1]

The determination of whether the transfer was improper involves similar considerations as those we confronted in *Rodgers v. Watt*, 722 F.2d 456 (9th Cir.1983), deciding whether to approve an extension of time to file an appeal. As here, the clerk in *Rodgers* failed to mail entry of judgment to the parties. The court stated that the Rodgers could be granted the relief they sought if they proved excusable neglect, which was defined as "lack of notice plus additional equitable factors such as attempts to learn the anticipated date of the decision." *Id.* at 458. Where counsel had sent his secretary to check the docket, who reported only the last entry, and where the trial court had found this neglect was excusable, counsel's efforts were justifiably sufficient. *Id.* at 461.

In granting the Navarros' motion for late appeal, the judge necessarily found that there was excusable neglect. The standard of review for a district court's finding of excusable neglect is abuse of discretion. *United States v. Houser*, 804 F.2d 565, 569 (9th Cir.1986). We find that the district court did not abuse its discretion in finding excusable neglect of the Navarros in fail-

---

1. Docket entry number 30 shows that judgment was executed on December 19, 1988 and entered on December 21, 1988. Docket entry number 31, dated December 20, 1988, is for the joint exhibit list. Docket entry number 32 appears on the next page. It is dated December 19, 1988 and is for the Findings of Fact/Conclusions of Law. It is thus out of order. The next entry, dated December 21, 1988, is for the opposition to the findings. This is the last entry until February 17, 1989.

ing to learn of the entry of judgment prior to the transfer of the currency. The Navarros were unable to learn of the entry of judgment through reasonable means. As a result, they did not move for a stay to prevent the *res* from being transferred. The defendant currency was thereby accidentally and improperly transferred to the United States Treasury. Under this exception, we retain jurisdiction over the *res*. *See Ten Thousand Dollars*, 860 F.2d at 1513 (jurisdiction retained where pro se litigant's request for appointment of counsel improperly failed to reach the district judge before forfeiture).

## II. MERITS

### A. Failure to Comply with the Local Rule

■ Although the court's failure to comply with the Local Rule for time of entry of judgment is a factor in our determination of jurisdiction, in considering the merits of the appeal, the error is harmless because the Navarros filed a motion to set aside the judgment. The district court, after reviewing the Navarros' arguments, including those in opposition to the findings and conclusions, adhered to the judgment. The Navarros thus were able to present their objections and have them considered by the court, which is the purpose of delaying entry of judgment under the Local Rules. *See Sea–Land Service, Inc. v. Murrey and Son's Co.*, 824 F.2d 740, 745 (9th Cir.1987) (premature signing of findings of fact, conclusions of law harmless because the proposed findings paralleled facts already stipulated to in pretrial order).

### B. Probable Cause

■ This court reviews de novo, as a question of law, the district court's determination of probable cause for forfeiture. *United States v. Padilla*, 888 F.2d 642, 643 (9th Cir.1989). Cash amounting to $29,-959.00 is an "extremely large amount" to be kept in the home. *Id.* at 644 ($2,500.00 not necessarily an extremely large amount to be kept at home, $39,086.00 is however). This alone is "strong evidence that the money was furnished or intended to be furnished in return for drugs." *Id.* (citation omitted). Drugs and drug paraphernalia found in the yard and adjacent trailer are also strong evidence of a drug opera-

tion. When the police made their initial knock and notice announcement they could hear one of the sisters yelling, "Bobby. It's the police!" Robert Jr., who was found stuffing bags of cocaine down the trailer kitchen sink, was a member of the family with apparent access to the main house. An officer involved in the search testified that he was aware at the time of the search, that it is common for narcotics dealers to keep the proceeds of sales separate from the transaction and drug storage location in order to avoid being robbed and to frustrate law enforcements' attempts to seize the proceeds. We find these factors sufficient to constitute probable cause to seize the currency.

### C. Legitimate Origins of the Money

■ The trial court's findings of fact regarding the origin of the currency are reviewed for clear error. *Padilla*, 888 F.2d at 645. The government introduced evidence which contradicted the claimants' earlier testimony regarding the source and amount of money each of the Navarros had claimed belonged to them. The Navarros did not agree on where the currency was kept, nor on its rightful custodian. The currency was found in a single dresser of men's clothing and was secreted in, among other areas, a man's sock. It seems unlikely that three grown family members would keep such large sums of cash hidden together at home, in such an unusual manner, when at least two of them had bank accounts. Because of these factors, we conclude that the district court did not clearly err in finding that the Navarros failed to carry their burden of showing a legitimate origin of defendant currency.

## CONCLUSION

Because the procedures by which the forfeiture judgment was executed were flawed so as to prevent the Navarros from applying for a timely stay, we find the defendant currency was improperly and accidentally transferred out of this jurisdiction. Therefore we have jurisdiction over

this appeal. There was probable cause to believe that the seized currency had been, or was intended to be, exchanged for narcotics. The district court did not clearly err in finding that the Navarros failed to prove that the currency was not connected to illegal drug transactions. The forfeiture judgment of the district court is therefore AFFIRMED.