**UNITED STATES of America, Plaintiff,**

v.

**$1,646,000 IN CASHIERS CHECKS AND CURRENCY, Defendant.**

**No. C 97–20326 JF.**

United States District Court, N.D. California, San Jose Division.

Nov. 2, 2000.

⚷5

U.S. Attorney's Office, Robert Ward, San Francisco, CA, for plaintiff.

Peter S. Hwu & Associates, Peter Hwu, San Jose, CA, for claimant.

ORDER [1] DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING CLAIMANT'S MOTION FOR SUMMARY JUDGMENT

FOGEL, District Judge.

The parties' cross-motions for summary judgment were heard on September 28, 1998. The Court has read the moving and responding papers and heard the argument of counsel. For the reasons set forth below, the Government's motion is denied and claimant's motion is granted.

## I. BACKGROUND

This case arises out of a "sting" operation conducted by the Santa Clara Police Department ("SCPD") concerning trafficking in stolen computer components. Both parties have provided elaborate and somewhat differing versions of the facts, the essence of which will be provided here as background.[2]

In October 1992, the SCPD seized $1,646,000 in cashier's checks and United States currency allegedly intended to be transported in interstate or foreign commerce. Federal authorities subsequently adopted the seizure in November 1992. Thereafter, Magistrate Judge Patricia V. Trumbull determined that probable cause existed and issued a federal seizure warrant for the checks and cash. The United States Customs Service ("Customs") executed the warrant and seized the funds, thereby taking responsibility for the federal forfeiture action.

Following the federal seizure in November 1992, administrative proceedings commenced during which time the District Customs Office in San Francisco and the

---

1. The original version of this order was issued on October 28, 1998, at which time it was labeled "Not For Publication." The instant order is identical to the original order except that the instant order is designated for publication and corrects typographical errors contained in the original order.

2. The Court does not seek to downplay, nor has it overlooked, the importance of specific individual facts to the respective motions for summary judgment and will refer to and incorporate them where appropriate in the discussion.

Customs Office of Regulations and Rulings ("Customs ORR") in Washington, D.C., considered Petitions for Remission by all claimants to the seized property, including CAF Technology, Inc. ("CAF"), the moving and responding claimant herein.[3] Two and one-half years later on May 22, 1995, Customs ORR issued a written decision denying relief to CAF.

After some routine administrative filings, the case was finally referred to the United States Attorney's Office on August 10, 1995, for commencement of a judicial forfeiture action. Soon thereafter, the case settled with respect to all claimants except CAF. The sum of $296,000 remains in dispute. For reasons which are at issue here, the Government did not file its Complaint for Forfeiture *in rem* until April 9, 1997.

Both parties now move for summary judgment. The Government claims that it is entitled to summary judgment because it proceeded with probable cause as is required for civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and that CAF is unable defeat forfeiture because it can neither prove that the property was not connected to illegal activity nor establish an innocent owner defense under 18 U.S.C. § 981(a)(2). CAF opposes the Government's motion and moves for summary judgment in its own right claiming that its right to due process of law was violated by undue governmental delay in the judicial prosecution of this case.

## II. LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of

informing the Court of the basis for the motion, and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

If the moving party meets its initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *See Anderson,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Barlow v. Ground,* 943 F.2d 1132, 1134–36 (9th Cir.1991).

On a motion for summary judgment, the Court will not consider new argument or evidence presented in a reply brief unless the non-moving party has had an opportunity to respond. *See Provenz v. Miller,* 102 F.3d 1478, 1483 (9th Cir.1996); *Ferguson v. City of Phoenix,* 931 F.Supp. 688, 696 (D.Ariz.1996). But *See Mid Valley Bank v. North Valley Bank,* 764 F.Supp. 1377, 1387 n. 10 (E.D.Cal.1991) (holding that, even though new material raised in a reply brief generally will not be considered on a motion for summary judgment, a new issue raised in a reply brief was properly before the court where the opposing party had addressed the issue in its opposition to the motion).

In particular, with respect to summary judgment and the law of forfeiture, the Court of Appeals for the Ninth Circuit has commented in *United States v. One 56–Foot Motor Yacht Named Tahuna:* "Although we evaluate summary judgment by

---

**3.** The remission process, the procedural prelude to formal forfeiture proceedings, is an informal process invoked at the request of the claimant in which probable cause for forfei-

ture is presumed and the claimant/petitioner seeks leniency from the Secretary of the Treasury. *United States v. Wong,* 62 F.3d 1212, 1214 (9th Cir.1995).

viewing the evidence in the light most favorable to the party opposing the motion, ... the 'summary judgment procedures ... must necessarily be construed in light of the statutory law of forfeitures, and particularly the procedural requirements set forth therein. Those procedures themselves are quite summary, especially when compared to normal actions.'" *United States v. Property Titled in the Names of Moises Ponce*, 751 F.Supp. 1436, 1438 (D.Hawai'i 1990) (citing 702 F.2d 1276, 1282 (9th Cir.1983) (citations omitted)).

■ In an *in rem* forfeiture proceeding, the Government first must establish probable cause to show the relationship of the property subject to forfeiture and the predicate offense. *United States v. Eaton Acres*, 904 F.2d 487, 490–91 (9th Cir.1990). If the Government establishes such a connection, the onus shifts to the claimant to show by a preponderance of the evidence that the property was not involved in the specific violation of the law alleged or otherwise to refute the Government's showing of probable cause. *United States v. $5,644,540 in U.S. Currency*, 799 F.2d 1357, 1362 (9th Cir.1986).

### III. DISCUSSION

### A. PROBABLE CAUSE

■ Because the prerequisite to the viability of any civil forfeiture case is a finding that the Government acted with probable cause to believe the property was subject to forfeiture, the Court begins its analysis there. Probable cause exists when the aggregate of facts gives rise to more than a mere suspicion that the property is related to unlawful activity. *United States v. Padilla*, 888 F.2d 642, 643–44 (9th Cir.1989). The Government may establish probable cause using circumstantial or hearsay evidence because "the finding does not depend upon admissibility but rather on the sufficiency and reliability of the evidence." *United States v.1982 Yukon Delta Houseboat*, 774 F.2d 1432, 1434 (9th Cir.1985).

In this case, the Government's asserted basis for forfeiture is 18 U.S.C. § 981(a)(1)(A) which provides in pertinent part:

> ... the following property is subject to forfeiture in the United States: (A) Any property, real or personal, involved in a transaction or attempted transaction in violation of ... section 1956 ... of this title, or any property traceable to such property.

18 U.S.C. § 981(a)(1)(A).

As required by the statute, the Government alleges that the $296,000 in question was involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956(a)(2). In relevant part, this section provides:

> (2) Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds ... to a place in the United States from or through a place outside the United States—
>
> (A) with the intent to promote the carrying on of specific unlawful activity; ... [violates the statute].

18 U.S.C. § 1956(a)(2).

The "specified unlawful activity" charged in this case is 18 U.S.C. § 2314 the applicable paragraph of which provides:

> "Whoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted, or taken by fraud ..." [violates the law].

18 U.S.C. § 2314.

Thus, to show probable cause in this case the Government must present evidence amounting to more than a mere suspicion that CAF violated or intended to violate 18 U.S.C. § 2314, a statute which requires knowledge that the subject prop-

erty was misappropriated in some way.[4] Specifically, in this case, both parties agree that to establish probable cause for forfeiture the Government must present evidence amounting to more than a mere suspicion that the funds for the purchase of the chips came into the United States from a foreign country, that officers of CAF believed the transaction involved stolen property, and that the central processing units (CPUs) were destined for transport in interstate or foreign commerce.

■ While not all of the Government's evidence is probative, the Court concludes that the evidence marshaled by the Government is sufficient in the aggregate to surpass the level of mere suspicion. Among the evidence presented, the Government submits the declarations of Sergeants James McMahon and Mark Kerby, two officers directly involved in the investigation. Sergeant McMahon's declaration, which includes information from his post-seizure interview with Hsuanchang Tseng, the CAF accountant in possession of the checks and currency at the time of the seizure, as well as the transcription of his post-seizure telephone conversation with Earl Yang, the Chief Executive Officer of CAF, provide statements relating to all the elements of the specified unlawful activity.[5] [6] In light of the great latitude afforded the Government in establishing probable cause, the Court concludes that CAF has not presented contradictory evidence sufficient to create a triable issue of fact.

## B. INNOCENT OWNERSHIP

■ Having concluded that the evidence offered by the Government is sufficient in the aggregate to give rise to more than a mere suspicion that CAF believed the money would be connected to illegal activity, the burden now shifts to CAF to establish an affirmative defense to the forfeiture by showing "(i) that the defendant property was in fact not involved in the alleged underlying offense," *see United States v. One 1977 Mercedes Benz, 450 SEL,* 708 F.2d 444, 447 (9th Cir.1983), *cert. denied, Webb v. United States,* 464 U.S. 1071, 104 S.Ct. 981, 79 L.Ed.2d 217 (1984), or (ii) that the statutory innocent owner defense applies (i.e., that the illegal activity took place without the claimant's knowledge), *see* 18 U.S.C. § 981(a)(2). In this case, where CAF has asserted the affirmative defense of innocent ownership, the Government argues that it is entitled to summary judgment because CAF cannot meet its burden of proving by a preponderance of the evidence that it lacked actual knowledge that the chips it sought to acquire were stolen.

Section 981(a)(2) provides an innocent owner defense for a property owner who commits an act without wrongful knowledge. It provides that

---

4. In addition, it is important to note that the Court must analyze the Government's showing in light of 19 U.S.C. § 1615 which requires the Government to have probable cause at the time it institutes forfeiture proceedings. 19 U.S.C. § 1615 applies in this action pursuant to 18 U.S.C. § 981(d). 19 U.S.C. § 1615 provides that the claimant shall bear the burden of proof in all forfeiture actions, "Provided, that probable cause shall first be shown for the *institution of such suit or action.*" (emphasis added). Accordingly, any governmental evidence provided in support of this summary judgment motion obtained after the April 9, 1997 filing of this action cannot be considered in the Court's probable cause analysis. Such evidence includes the depositions of Kenny Wu and Kara Yu, both taken February 25, 1998, as well as the review of CAF's business records undertaken during discovery.

5. CAF's argument that the SCPD arrested everyone and seized the money before the actual consummation of a sale does not destroy the existence of probable cause as of the date of the institution of the action. When the Government instituted the suit, it had compiled sufficient evidence from CAF parties to the transaction and background events to constitute possibly less than prima facie proof but certainly more than a mere suspicion of CAF's intended involvement in the charged illegal activity.

6. Sergeant Kerby was also present for and participated in the post-seizure telephone interview with Earl Yang.

No property shall be forfeited under this section to the extent of the interest of an owner ... by reason of any act or omission established by that owner ... to have been committed without the knowledge of that owner.

18 U.S.C. § 981(a)(2).

■ The parties disagree as to the legal standard applicable to an assertion of innocent ownership under § 981(a)(2). However, the Ninth Circuit has addressed the issue and has held that the statute requires claimants only to demonstrate ignorance of the illegal transactions. *United States v. Real Property 874 Gartel Drive, Walnut, California*, 79 F.3d 918, 922 (9th Cir.1996). "Turning a blind eye" or "wilful blindness" will be equated with knowledge of illegal activity. *United States v. All Monies ($477,048.62)*, 754 F.Supp. 1467, 1477 (D.Hawai'i 1991).

■ The Court rejected the Government's argument that a claimant has the additional burden of demonstrating that it had taken all reasonable steps to prevent the illegal use of the property. The Court concluded that the burden arises only when the forfeiture statute's innocent owner defense contains a consent element. *See,* e.g., 21 U.S.C. §§ 881(a)(6) & 881(a)(7). *United States v. Real Property 874 Gartel Drive, Walnut, California*, 79 F.3d at 922. In the context of § 981(a)(2) which does not contain a consent element, a claimant's failure to establish the exercise of due care does not preclude its reliance on the innocent owner defense.

■ Where the Government seeks summary judgment with respect to an affirmative defense raised by the claimant, a matter as to which the claimant would have the burden of proof at trial, it must show that, taking all the evidence in the light most favorable to the claimant, no reasonable jury could find in the claimant's favor. This burden is met simply by "showing

that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett, supra*, 477 U.S. at 325, 106 S.Ct. 2548. Hearsay evidence offered by the Government, though admissible to establish probable cause, may not be used to determine the issue of innocent ownership. *United States v. All Monies*, 754 F.Supp. at 1477.

■ As an initial matter, the Government contests CAF's standing to assert its affirmative defense, arguing that a claimant must establish ownership before even raising the issue of innocence.[7] The Government contends that CAF's inability to produce documentation relating to the $296,000 undercuts any claim of ownership CAF may assert. This argument is unpersuasive. It is well-established that "in order to contest a forfeiture, a claimant need only have some type of property interest in the forfeited items. This interest need not be an ownership interest; it can be any type of interest, including a possessory interest." *United States v. $191,910.00 in U.S. Currency,* 16 F.3d 1051, 1057 (9th Cir.1994). Here, CAF's "repeated, colorable claim of possessory and ownership interests ... combined with the fact that the money was taken from [an authorized CAF agent's] possession, [is] more than sufficient to support standing." *Id.* at 1058.

■ On the merits, the Government introduces a compilation of facts it argues are inconsistent with innocence, including admitted irregularities of the transaction ranging from the form of payment to the unusual location of the transaction at a San Jose hotel. The Government substantiates its argument with statements by the CAF accountant in possession of the money at the time of seizure as well as Sergeant Kerby's post-seizure telephonic interview with Earl Yang ("Yang"), the Chief Executive Officer of CAF, regarding

---

**7.** At oral argument, the Government additionally argued the standing issue with respect to the "prejudice" factor in opposition to CAF's undue delay argument. The Court will revisit this argument in its treatment of CAF's motion.

the transaction. Each individual admitted many unusual attributes of the proposed transaction.

Additionally, the Government has provided Sergeant Kerby's own declaration in which Sergeant Kerby indicates that he repeatedly indicated the stolen nature of the computer chips to CAF's purchasing agent John Priadi ("Priadi").[8] Attached to this declaration is the hand-written confession of John Priadi in which Priadi admits that he informed Yang of the possibility that the computer chips were stolen.

Focusing on the element of wilful blindness, which as noted earlier is equated with actual knowledge for the purposes of statutory innocent owner defenses in civil forfeiture cases, the Government emphasizes Yang's initial acknowledgment of the transaction's possible illegality to Priadi and his reluctance to involve CAF in illegal business. The Government then points to Yang's "about-face" one week later, at which time he agreed to proceed with the purchase on the condition that CAF receive a legitimate invoice which he believed would sever CAF's connection to any possible unlawful activity, arguing that such conduct could not have constituted an innocent attempt to conduct a normal business transaction, but rather was an attempt to cover or conceal guilty knowledge.

As support for its contention that it did not have the actual knowledge necessary to defeat its assertion of innocent owner-ship, CAF relies on the facts set forth in its own motion for summary judgment.[9] The admissible evidence presented on the issue of CAF's actual knowledge essentially amounts to the same evidence presented by the Government, but the Court is asked to draw different inferences. CAF suggests that when the information provided by Yang is taken in the context of his entire conversation with Sergeant Kerby, it is not clear that CAF had actual knowledge that the transaction would involve stolen goods. CAF also notes that Sergeant Kerby indicated in his deposition that he was under the impression that Priadi would actively seek to mislead the purchaser (CAF) into believing the goods were not stolen.

Further, with respect to this issue, as was not the case with respect to the issue of probable cause, it *is* significant that the SCPD intervened prior to any interaction between the parties. Yang instructed accountant Tseng not to deliver the monies in the absence of appropriate documentation. While it is true that "innocence is incompatible with knowledge that puts the owner on notice that he should inquire further", *United States v. Real Property Located at 10936 Oak Run Circle, Moreno Valley, California,* 9 F.3d 74, 76 (9th Cir. 1993), the Court concludes that a reasonable person could find that Yang and Tseng, on behalf of CAF, would have at-

---

**8.** While the parties do not dispute that Priadi was a CAF employee, they disagree as to his role in this particular transaction. The Government argues that Priadi acted as CAF's authorized purchasing agent at all relevant times. Conversely, CAF argues that Priadi acted as an independent chip broker and not as its duly authorized agent.

**9.** The Government attacks CAF's opposition for its failure to controvert the facts set forth in the Government's motion. However, in support of its own motion for summary judgment based on unconstitutional governmental delay in the prosecution of this case, CAF has provided extensive evidence with respect to the entire course of events. In its opposition to CAF's motion for summary judgment, the Government moves to strike certain support-ing materials submitted by CAF on the grounds that they are inadmissible as unauthenticated documents or unattributed statements. The objection is noted and to the extent that such materials are inadmissible, the Court has not considered them in reaching its decision. However, the Court concludes that CAF may incorporate admissible supporting evidence submitted with its cross motion for summary judgment in opposition to the Government's arguments regarding the innocent owner defense.

It should be noted that, in reaching its decision on the issue of innocent ownership, the Court has not considered the untimely declaration of Earl Yang submitted after the close of briefing.

tempted to investigate further before actually completing the transaction. The premature intervention precluded any such inquiry and creates a triable issue as to CAF's knowledge.

Because there is no direct evidence that CAF actually knew the money would be used to purchase stolen CPUs, CAF's innocent owner defense turns on whether it can prove by a preponderance of the evidence that it did not wilfully blind itself.

 While there is no consensus as to the degree of culpability required to establish wilful blindness, a fair reading of the opinions deciding the issue leads to the conclusion that wilful blindness involves a state of mind of much greater culpability than simple negligence and more akin to knowledge. *United States v. One 1973 Rolls Royce*, 43 F.3d 794, 808 (3rd Cir. 1994). The Court elaborated further.concluding that wilful blindness results when one is aware of a high probability of a fact and consciously avoids seeking the truth because he desires to remain ignorant of it. *Id.* at 807–812.

Although the record supports a reasonable inference that CAF intended to avoid knowledge of illegal acts by "sticking [its] head in the sand", *United States v. All Monies ($477,048.62)*, 754 F.Supp. 1467, 1477 (D.Hawai'i 1991), the Court cannot conclude as a matter of law that no reasonable trier of fact could find CAF's statements and actions to be consistent with innocent conduct. The question is "whether reasonable minds could differ as to the import of the evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). CAF's evidence is sufficient to defeat this aspect of the Government's motion.

## C. UNDUE DELAY

 Having concluded that there are material issues as to the viability of CAF's innocent owner defense, the Court must proceed to analyze CAF's own motion for summary judgment on the basis of undue delay. CAF argues that the Government's aggregate delay between seizure of the defendant property in 1992 and the scheduled trial of this action in 1998 was unreasonable and resulted in a violation of CAF's constitutional right to due process of law. The Government calculates the period of delay differently contending that CAF's knowing waiver of its right to prompt judicial resolution of its case started the clock running on August 18, 1995, the date the case was transferred to the United States Attorney's Office. The Government also contends that such a period of delay, while sufficient to trigger a due process analysis, did not offend any constitutional principles.

 In analyzing due process delay claims in civil forfeiture cases, courts apply the four-factor balancing test used to evaluate Sixth Amendment Speedy Trial issues. The four factors that must be weighed are: (1) the length of the delay; (2) the reasons for the delay; (3) whether the claimant asserted his right to a prompt judicial hearing or acquiesced in the delay; and (4) whether the claimant suffered prejudice due to the delay. *United States v. $8,850 in United States Currency*, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983) (hereinafter "*$8,850*"). However, it is important to note that "none of these factors is a necessary or sufficient condition for finding unreasonable delay. Rather, these elements are guides in the balancing of interests of the claimant and the Government to assess whether the basic due process requirement of fairness has been satisfied in a particular case." *Id.* at 565, 103 S.Ct. 2005.

The only issue before the Court on CAF's motion for summary judgment is whether the Government's delay rises to the level of a constitutional violation requiring dismissal of the action. While the parties disagree as to the length of delay which the Court should consider in rendering its decision, the parties do agree that, given the facts of this case, the interpreta-

tion of the *$8,850* decision will be determinative.

## 1. Length of Delay[10]

The initial hurdle for this Court is to determine which period of time constitutes the relevant period of delay. CAF asserts that the relevant time period is that between the seizure of the property and the trial or other disposition of the matter. CAF, therefore, calculates a delay of more than six years. The government maintains that the period of the Customs Office administrative process (from December 1992 until June 1995) may not properly be considered by the Court given CAF's voluntary waiver of its right to a prompt judicial resolution of the case. The Government thus calculates the remaining delay as being twenty-two months.[11]

■■■ The Ninth Circuit appears to be in accord with those courts holding that delay between the time of filing of the complaint and the time of trial or other disposition of the matter must also be counted in addition to any period of delay prior to filing the complaint. *United States v. $12,248 in United States Currency*, 957 F.2d 1513, 1518 (9th Cir.1991).[12] The critical issue for this Court then is the effect of CAF's voluntary waiver of its right to prompt judicial action.

In the *$8,850* case, the Supreme Court addressed the issue of the effect of a pending administrative petition on the Government's responsibility to institute civil forfeiture proceedings promptly. The Court rejected the Government's position that the pendency of such a petition should toll completely the prompt institution of proceedings requirement and stated that

A claimant need not waive his right to a prompt judicial hearing simply because he seeks the additional remedy of an administrative petition for mitigation. Unreasonable delay in processing the administrative petition cannot justify prolonged seizure of his property without a judicial hearing. Rather, the pendency of an administrative petition is simply a weighty factor in the flexible balancing inquiry.

*United States v. $8,850 in United States Currency*, 461 U.S. at 566–67, 103 S.Ct. 2005.

■■■ In this case, the Government essentially makes the same argument as it did in *$8,850*, stating that CAF's voluntary and knowing waiver of the prompt institution of judicial proceedings in order to avail itself of administrative remedies undercuts CAF's assertion of unconstitutional delay. As support for its position, the Government cites a post-*$8,850* Ninth Circuit case in which the claimant waived its right to have the seizure referred to the United States Attorney for commencement of judicial forfeiture proceedings and the Court found that delay was "not an issue" in light of the waiver. *United States v. One 1980 Mercedes Benz 500 SE*, 772 F.2d 602, 606 (9th Cir.1985).

Despite this authority and the Government's showing, the Court concludes that under *$8,850*, CAF's waiver does not preclude counting the period of the administrative process as part of the delay period on the specific facts of this case. It is true that the waiver must be given some weight in the due process analysis as it puts the claimant on notice that forfeiture proceed-

---

10. Normally, the initial inquiry is whether the period of delay after seizure is sufficiently long to trigger a Due Process inquiry in the first place. The Government concedes that the delay between the referral to the United States Attorney's Office and the commencement of the action, a delay of approximately twenty-two (22) months, is sufficient to trigger the inquiry.

11. The parties have agreed that the delay of the trial date from June 15, 1998, to November 30, 1998, would not be counted against the Government because both parties sought the postponement.

12. In light of this precedent, the Court rejects the government's contention that the clock stopped running on April 9, 1997, the date of the filing of the Complaint.

ings will be delayed pending resolution of the administrative proceedings. On the proper facts, it may also evidence that the claimant does not have a strong interest in the prompt initiation of a judicial proceeding. However, the facts of *$8,850* and the instant matter differ substantially.

In *$8,850*, the Court found that the claimant did not indicate that she desired early commencement of civil forfeiture proceedings. CAF, on the other hand, diligently and continuously sought to speed up the petition process, a fact which the Government readily concedes. CAF's attorney initially indicated his readiness to resort to a judicial forum and specifically conditioned his waiver on Customs ORR's prompt issuance of a decision as evidenced by the San Francisco District Customs Director's referral memorandum to Customs ORR. The Government's response that such a conditional waiver is meaningless in light of CAF's ability to abandon the administrative process and initiate judicial action at any time, while technically correct, is unpersuasive on the facts of this case.

The record shows that in response to CAF's persistent inquiries as to the status of its petition, CAF received assurances of prompt review by the responsible Customs attorney. In discussing the remission process, the *$8,850* Court recognized that the Secretary of the Treasury "grants at least partial relief for an estimated 75% of the petitions." *United States v. $8,850 in United States Currency*, 461 U.S. at 558, 103 S.Ct. 2005 (citing U.S. Customs Service, Customs U.S.A. 36 (1982)). Given the success rate and the informal, relatively inexpensive procedure involved in the remission process, it is not fatal to CAF's

claim that it did not wholly abandon the process and demand judicial action. Nothing in the *$8,850* decision suggests that, having obtained a waiver as a precondition of initiating the administrative process, the Government may ignore a claimant's repeated requests for reasonably prompt attention to its case, thereby effectively forcing the claimant to forfeit its valuable right to an administrative determination of its action in order to obtain relief.

In light of the foregoing, the Court finds that the proper period of delay includes the time during which Customs ORR processed the administrative petition. As such, it declines to adopt the Government's position that twenty-two months is the appropriate period of delay and will consider the period of delay from the time of the federal seizure until June 15, 1998, the original date set for trial.

## 2. Reasons for the Delay

Closely related to the length of the delay are the reasons the Government asserts to justify the delay. Having concluded that the Government may not rely upon the waiver to justify its lengthy delay, the Court turns to the other justifications offered by the Government.[13]

In its opposition to CAF's motion for summary judgment, the Government offers no specific explanation of the delay during Customs ORR's review of CAF's administrative petition, presumably because of its reliance on CAF's waiver to completely stop the clock. However, the deposition testimony of Customs Attorney Schneider introduced by both parties reveals a less than diligent pursuit of CAF's

---

**13.** It is undisputed that the Government has offered no justification at all for the delay between December 1992, the date on which Customs in San Francisco received CAF's petition for remission, and September 1993 when the case was referred to Customs ORR in Washington, D.C. The Fifth Circuit has determined "the fact that for the first six months period nothing was done by the government" to be "of critical importance".

*United States v. $23,407.69 in U.S. Currency*, 715 F.2d 162 (5th Cir.) reh'g denied, 720 F.2d 1291 (1983); *see also Gulf of Maine Trawlers v. United States*, 674 F.Supp. 927, 938–940 (D.Maine 1987) (three month delay between seizure and referral of case to United States Attorney criticized and government warned that similar delays "will not be looked upon favorably in the future" in that district.)

petition. While an administrative investigation is inherently time-consuming, CAF's formal petition for remission consisted of seven pages. The initial examination of such a petition would not necessarily involve a prolonged period of time. The Government offers no evidence that the months following submission of the petition were spent in a thorough evaluation of the various allegations contained therein. To the contrary, Mr. Schneider's inability to offer any specifics regarding his supplemental investigative research of CAF's petition and his inability to explain any relationship between CAF and the other claimants which would mandate issuing a consolidated decision indicate that the delay resulted more from a heavy workload or dilatory conduct than from investigative pursuits.[14] When questioned about the reasons for the delay in light of the repeated status inquiries from CAF's attorneys, he stated that he "must have been doing other things at the time". While Mr. Schneider does offer something more than nothing as a reason for the delay, it cannot be said that the Government has met its burden of justifying the delay at the hands of Customs ORR.

In terms of the delay after the case reached the United States Attorney's Office (July 26, 1995 to April 9, 1997), "the Government must be allowed some time to decide whether to institute forfeiture proceedings ... Normally, investigating officials can make such a determination fairly quickly, so that this reason alone could only rarely justify a lengthy delay." *United States v. $8,850 in United States Currency,* 461 U.S. at 565, 103 S.Ct. 2005. Because the Government did not make its

determination to institute forfeiture proceedings quickly, it offers the declarations of Assistant U.S. Attorney Robert Ward and U.S. Customs Service Special Agent Raymond Marchetta detailing the investigations and inquiries made after the case reached Mr. Ward's desk. Mr. Ward indicates two main reasons for his delay in filing the Complaint: the complexity of the case and his workload. First and foremost, the Government emphasizes the unique and complex history of the case including the number of individuals and corporate entities involved, the predicate criminal activity, the large amount of money involved, and the supplemental investigation and legal research required to fashion a federal money laundering offense out of the facts as reported. Secondarily, Mr. Ward ascribes the delay to an unexpected and increased workload at the United States Attorney's Office.[15]

The cases cited by CAF in which the courts have found governmental reasons for delay to be unconvincing are not persuasive given the Government's showing as to this portion of the delay in this case. In the cases cited by CAF, the Government, in defense of its delay, offered either no reason, possible reasons or blatantly unacceptable reasons such as failure to file due to governmental oversight. While CAF may not agree with the Government's proffered justifications, the evidence here competently and sufficiently presents plausible reasons for the U.S. Attorney's delay. However, while the Government has made a sufficient showing with respect to the reasons for delay after this case reached the United States Attorney's Office, it has

14. In attempting to explain the delay, Mr. Schneider indicates that he did not feel at liberty to review the petitions, let alone to issue a decision on CAF's petition, until the resolution of the underlying criminal prosecutions. By his own admission, he had received a summary of the results from the legal proceedings by late April 1994. Between April 1994 and January 1995, Mr. Schneider claims to have been awaiting the submission of supplemental information regarding the other claimants. Mr. Schneider is unable to explain satisfactorily the delay between January and May 1995 at which time he issued a five page decision denying all of the petitions.

15. The increased workload occurred as a result of a Ninth Circuit opinion barring certain civil forfeiture actions under the Double Jeopardy Clause if the property owner had been convicted of the underlying offense in a separate proceeding.

failed to do so with respect to the delay prior to that time, and the unjustified portion of the delay must be considered in the Court's overall analysis.

### 3. Claimant's Assertion of the Right to Judicial Hearing

The third element to be considered in the due process balancing is the claimant's assertion of the right to a judicial hearing. In *$8,850*, the Court set forth the ways in which a claimant is able to trigger rapid filing in a forfeiture action.

> "First, the claimant can file an equitable action seeking an order compelling the filing of a forfeiture action or return of the seized property. Less formally, the claimant could simply request that the Customs Service refer the matter to the United States Attorney. If the claimant believes the initial seizure was improper, he could file a motion under Fed. R.Crim.P. 41(e) for a return of the seized property." (citations omitted)

*Id.* at 569, 103 S.Ct. 2005.

In *$8,850*, the Court found that the claimant did none of these things and only occasionally inquired about the status of her petition for remission at which time she asked that the Secretary reach a decision promptly. The Court held that failure to utilize the aforementioned remedies indicated that the claimant did not desire an early judicial hearing. *Id.* at 569, 103 S.Ct. 2005. In another case involving the effect of a waiver, the Court found that the claimant's waiver of referral of the matter to the United States Attorney rendered its assertion of undue delay untenable. *United States v. $831,160.45 United States Currency*, 607 F.Supp. 1407 (N.D.Cal.1985).

However, while these cases would seem to indicate that this factor weighs against CAF, this case again is factually distinguishable. Unlike the claimants in *$8,850* and the other cases analyzing the effect of a waiver, CAF explicitly conditioned its waiver on a prompt decision from Customs ORR and admittedly made regular communication with Customs ORR during the pendency of its administrative petition seeking a prompt resolution of the matter.

The Government's further argument that this assertion-of-right factor weighs against CAF because it made no assertion whatsoever of its right during the period *after* the matter was referred to the United States Attorney does not change the outcome. It is incumbent upon the Government to institute civil forfeiture proceedings expeditiously. The Government fails to cite any authority for the proposition that a claimant has the burden to request expedited or prompt attention to its case after it has been referred to the United States Attorney. "The government may not idly rely indefinitely upon the silence of the claimant to avoid its constitutional obligation." *United States v. $19,440.00 in U.S. Currency*, 829 F.Supp. 303, 308 (D.Alaska 1993).

The record shows the Government clearly understood or certainly should have understood CAF's urgent desire to resolve this matter. To allow the Government to use the waiver required of all petitioners to shift the burden to the claimant and justify its inaction in the administrative processing of this case would undermine the purpose of both the administrative review process and the diligent prosecution requirements in the law of forfeiture.

### 4. Prejudice

The final element is whether the claimant has been prejudiced by the delay. In determining the existence of prejudice, the primary inquiry is "whether the delay has hampered the claimant in presenting a defense on the merits, through, for example, the loss of witnesses or other important evidence." *United States v. $8,850 in United States Currency*, 461 U.S. at 569, 103 S.Ct. 2005. However, the "mere absence of prejudice does not make the government's position substantially justified" given that the four factors merely serve as guides in balancing the respective interests

of the parties. *United States v. $12,248 in United States Currency*, 957 F.2d at 1519.

The Government does not and could not discount case authority indicating that actual prejudice may result from the prolonged deprivation of a significant amount of money. *See United States v. $8,850*, 461 U.S. at 565, 103 S.Ct. 2005; *see also United States v. $12,248 in United States Currency*, 957 F.2d 1513, 1519 (9th Cir.1991); *United States v. All Funds on Deposit at Merrill Lynch, Pierce, Fenner & Smith*, 801 F.Supp. 984, 989 (E.D.N.Y.1992).[16] In this case, CAF was deprived of $296,000 for a substantial period of time which resulted in significant hardship to the company.[17]

Further, CAF has offered evidence that the delay may prejudice its ability to marshal an effective defense to forfeiture at trial. Specifically, CAF contends that Sergeant Kerby's alleged inability to recall a statement he made to CAF's attorney Mr. Hwu in 1992 regarding CAF's probable status as an innocent victim of John Priadi's criminal activity is material to CAF's presentation of its innocent owner defense.[18] The Government asserts that CAF cannot now assert a claim of prejudice based on fading memories and loss of notes or trial witnesses given CAF's failure to conduct any investigation of the

incident at the time. The Government emphasizes that Mr. Hwu was CAF's attorney at the time of the seizure and that Earl Yang and Hsuanchang Tseng continued to serve as officers of CAF for some time after the seizure. While the Court agrees with the Government that CAF might have mitigated the prejudice to its defense by being more diligent in preserving evidence, CAF's failure in this regard is insufficient to allow the Government to escape responsibility completely for a delay of more than six years. Considering the combination of the deprivation of funds and the possibility of fading memories and unavailable witnesses, it appears that CAF has suffered some actual prejudice due to the delay.

CAF also argues that, in addition to suffering actual prejudice, the long delay presumptively prejudiced its ability to defend against the forfeiture at trial. CAF relies on *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), a speedy trial case in which the Court developed the concept of presumptive prejudice to ameliorate the difficulties in proving "time's erosion of exculpatory evidence and testimony." *Doggett*, 112 S.Ct. at 2692.[19]

Despite the speedy trial context in which the Court developed the concept, CAF ar-

16. CAF also submitted the declaration of Kara Yu, CAF's Secretary and purchasing agent, who stated that the deprivation of funds threatened the small company's financial solvency and jeopardized its ability to generate business growth. The Government challenges her statements as vague, conclusory, and unsupported by documentary evidence.

17. The Government also revisits its standing argument stating that CAF's failure to produce documentation of its rightful ownership of the money necessarily defeats any claim of prejudice it now asserts. As stated above, CAF's repeated assertions of ownership and the fact that police seized the money from the possession of a CAF employee are sufficient to establish CAF's legitimate ownership interest in the money.

18. CAF contends that Sergeant Kerby's further testimony regarding the decision not to prosecute CAF employees Tseng, Yang, and

technician Sun is consistent with having made such a statement.

Further, CAF points out the discrepancy between Sergeant Kerby's deposition testimony taken in April 1998 and his declaration given in September 1998 regarding the destruction of his handwritten daily notes of the "sting" operation. CAF contends that such notes contain information material to the issue of its actual knowledge of the stolen nature of the CPUs and that their loss resulted from the passage of time. The Government, however, contends that such notes are incorporated into police reports and routinely destroyed within one week.

19. In *Doggett*, the Government delayed eight and one-half years between Doggett's indictment and his arrest, a delay in which the defendant did not acquiesce given his unawareness of the indictment. The Supreme Court ultimately reversed his conviction and dismissed the indictment based on the Government's "official negligence".

gues that the notion of presumptive prejudice based on lengthy and unjustifiable delay is directly applicable to forfeiture cases. CAF asserts that both the Speedy Trial Act and forfeiture statutes require strict governmental compliance due to the important constitutional rights they protect. CAF argues that the facts of the delay in this case fit squarely within the parameters of *Doggett* because the Government was not at all diligent in the prosecution of the case.

While the Court agrees with the Government that the *Doggett* case involved a more egregious and overt display of "official negligence", the Court cannot say that the facts of this case do not warrant relief pursuant to *Doggett*. The general policy behind *Doggett* is to encourage the Government to act expeditiously and diligently in the execution of its duties. Given the length of the delay in this case, the doctrine of presumptive prejudice acquires great import. It is not unreasonable to conclude that the *Doggett* rationale would render the passage of nearly six years prejudicial to the trial of this matter "in ways that neither party can prove or, for that matter, identify." *Doggett v. United States*, 112 S.Ct. at 2693. The Court finds that the prejudice factor tips in CAF's favor.

The Court concludes, pursuant to the four factor test set forth in *$8,850*, that the Government's delay in filing this judicial forfeiture action has violated CAF"s due process rights. The length of delay was substantial, even extraordinary, and the Government failed to show that it diligently pursued an investigation of the matter throughout that period. Although CAF did sign a waiver of its right to immediate commencement of judicial proceedings in exchange for the promise of administrative review, it diligently and persistently communicated with Customs ORR throughout the administrative process requesting prompt attention to the matter and objecting to the lack of a resolution. Finally, although prejudice is the most difficult factor to prove and CAF is not entirely with-

out fault of its own, CAF has presented sufficient evidence to enable the Court to conclude that CAF has suffered prejudice as a result of the delay.

## IV. ORDER

Accordingly, the Court orders that:

1. Plaintiff's motion for summary judgment is DENIED;

2. Claimant's motion for summary judgment is GRANTED;

3. Judgment shall be entered in favor of Claimant.